DUEBER WATCH-CASE MANUF'G CO. et al. v. ROBBINS et al.

(Circuit Court of Appeals, Sixth Circuit. May 12, 1896.)

No. 396.

1. PATENTS—INFRINGEMENT—ESTOPPEL AGAINST LICENSE.
   The fact that an alleged infringer was at one time, before the alleged infringement took place, a licensee under the patent, does not estop him from disputing its validity, though in a doubtful case it might have considerable evidential force as an admission.

2. SAME—INVENTION—EXTENSIVE USE.
   Extensive use is only to be considered as evidence of invention in doubtful cases, and it loses its evidential force where it can be attributed to

something else than mere novelty, as in case of a use in connection with another device, of a meritorious character, which supplies a long-felt want.

3. SAME—STEM-WINDING WATCHES.

The Colby patent, No. 287,001, for an improvement in stem-winding watches, in which the essential feature is a spring-latch attachment of the stem with the key, whereby the latter is free to rotate, but is prevented from being moved longitudinally except by special effort, is void for want of patentable invention, in view of the prior state of the art, or, if sustainable at all, is limited to the particular form shown, and is not infringed by a device made under the Bradley patent, No. 411,420, in which the spring is held in position inside the stem in a different way. 71 Fed. 189, reversed.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

This was a suit in equity by Royal E. Robbins and Thomas M. Avery against the Dueber Watch-Case Manufacturing Company, John C. Dueber, its president, and William C. Moore, its secretary and treasurer, for alleged infringement of a patent relating to stem-winding watches. The circuit court entered an interlocutory decree sustaining the patent, finding infringement, and referring the case to a master for an accounting. 71 Fed. 189. Defendants have appealed.

This is an appeal from a decree enjoining the infringement of a patent. R. E. Robbins and Thomas M. Avery, as trustees, held the title by assignment to a patent (No. 287,001) issued on October 23, 1883, upon an application made February 1, 1883, to Caleb Colby, for a new and useful improvement in stem-winding watches. It was averred in the bill, and appeared in the evidence, that the Dueber Watch-Case Manufacturing Company had taken a license from Robbins and Avery of the following patents for improvements in watch cases: "No. 192,425, issued June 26, 1877, to Fisher & Lucas; No. 220,916, issued October 28, 1879, to E. C. Fitch; No. 287,001, issued October 23, 1883, to C. K. Colby; and No. 312,856, issued February 24, 1885, to George Hunter." On the 13th of February, 1891, the license was terminated because of the failure of the defendant company to make returns and payments in accordance with its provisions. The defenses set up in the answer were want of novelty, anticipation, and noninfringement. The Colby invention relates to the class of watches known as "stem-winding watches," in which a key or stem arbor passes through the hollow stem of the case into engagement with the winding arbor of the watch movement. so that by the rotation of the key the watch may be wound. By its longitudinal movement within the stem, the key may be retracted from the winding arbor of the movement sufficiently to allow the movement to be easily lifted out of the case, or inserted therein. The gist of the device is in providing a spring latch within the hollow stem, by which the key and stem may be latched to each other in such a manner that the key will be held in its inner position, but will yield upon effort, and allow the key to be retracted a certain distance, when the spring will again operate as a latch to secure the key in the second or outer position, from which it can, by another effort, be pushed back to its first position. The patent describes the essential feature of the device "as an elastic or spring-latch attachment of the stem with the key, whereby the latter is free to rotate, but is prevented from being moved longitudinally except by a special effort." The specifications and drawings describe the various forms of the device. In some of them the spring latch is attached to the stem, and engages in a circumferential groove upon the key, and in others the spring is attached to the key, and engages in a circumferential groove on the stem. In others a shoulder is substituted for the groove. Figs. 1 and 2, 6 and 7, 10 and 11 and 12, in the Colby patent, give a sufficient understanding of the operation of the device, and its variations. The figures are as follows:

Fig. 1

Fig. 2

Fig. 6

Fig 7

The inventor describes the purpose of his invention as follows: "My invention relates to a stem-winding pendant for watches, being especially adapted to that class of watches wherein the back of the case is permanently closed, and the movement, or the ring in which it is mounted, is hinged to the cup-like case. My pendant may, however, be used in any watch case. In watches having stem-winding pendants, the key in the pendant passes into the movement, and engages a socket or square in or on the winding arbor; and before the movement can be lifted out, or turned on its hinge, this key must be disengaged from the movement by withdrawing it far enough to clear the latter. My invention provides a ready means for doing this. * * * Fig. 1 is a vertical midsection of a watch pendant provided with my improvements; the plane of the section being taken edgewise of the watch case, and the key shown as protruding into the hollow of the winding arbor. Fig. 2 is a similar section taken at right angles to Fig. 1, showing the key withdrawn so as to permit the movement to be lifted out. A is the watch case. B is the tubular stem, attached to the case in the usual way. C is the key, and D is the crown attached thereto to form a head or thumb piece, by which the key is turned in winding. These parts, per se, are common in stem winding and setting watches. a and a′ are two internal circular grooves at different depths in the hollow of the stem. They form latch bearings for the rotating key. To the crown, D, or the key, C, indifferently are secured latch spring or springs, b, b, preferably four in number, provided with projecting angles or parts, b′. These angles spring into and engage one or the other of the grooves, a, a′, and the springs are inserted in the hollow of the stem, as shown in Figs. 1 and 2. When the key is pressed clear down into the hollow of the stem, the elasticity of the springs causes the projections, b′, to engage in the lower grooves, a. The key will now be in engagement with the winding arbor, C, in the movement, F, if there be a movement in the case, and by rotating the key in the usual way the watch will be wound up. The bearing which the key finds in the neck of the stem, and that which the crown finds on the exterior surface of the stem, prevent any lateral play

of the key; and the engagement of the latch spring, b, in groove, a, prevents any longitudinal movement of the key, unless some force is applied to move it. In other words, the key rotates readily, but only yields to extra pressure purposely exerted when an attempt is made to withdraw it longitudinally. If, however, it be desired to disengage the key from the movement for any purpose whatever, the operator may grasp the crown, and pull on it with force sufficient to disengage the springs from groove, a, when the key may be withdrawn far enough for the projection, b', to engage groove, a'. The parts will now assume the position shown in Fig. 2. The key will be withdrawn far enough to be free from the movement, and it may be rotated freely in this position in the bearing found in the groove, a'. * * * In lieu of employing the two grooves, a, a', in the stem, and one series of projections, b', on the springs, I may employ but one groove, a, as in Fig. 6, and provide the springs with two series of projections, b'. In Fig. 7 I have shown a further modification, in which the springs are mounted in the hollow of the stem, and the two series of projections, b', thereon, protrude through slots in the wall of the stem. A groove in the margin of the opening in the hollow crown, D, takes over and engages the lower one of these projections, as clearly shown in said figure. * * * In Fig. 10 I have shown the grooves, a. and a', formed in the shank of the key itself, and the latch springs mounted in the stem; and in Fig. 11 I have shown the same arrangement, except that the key is provided with projecting ribs, b', and the springs have recesses, a, to engage said ribs. In Fig. 12 I have shown the grooves, a, a', arranged exteriorly of the stem, and the springs arranged to engage them in that position. * * * I have shown all these forms and modifications in order to illustrate the many ways in which my invention may be carried out. The essential features of all is the elastic or spring-latch attachment of the stem, B, with the key, C, whereby the latter is free to rotate, but is prevented from being moved longitudinally except by special effort. The annular groove or rib engaged by the spring latch I denominate an 'annular latch device,' and it is immaterial whether the projecting part is on the spring, or the other part, and it is also immaterial whether the spring be connected with the key or the tubular stem. The operation is the same in either case. The upper groove, a', in the stem, is not absolutely necessary, as it is not necessary that the key shall be rotative when drawn back, as in Fig. 2; but some form of stop should be provided, to prevent the key from being entirely withdrawn. This withdrawal of the key is not desirable, although it will do no particular harm. * * * I have not shown how my key, C, may be employed as a push pin for releasing the lid of the case from its spring catch, as I make no claim to this. I will say, however, that the tip of the key passes through the case spring, and a shoulder on its shank rests on the latter. The retaining groove, a, is made wide enough to allow of the necessary slight movement longitudinally of the key. This is a common mode of constructing such push-pin devices. It must be borne in mind that my invention is designed to be applied only to the pendants of stem-winding watches, wherein the key is mounted rotatively in the stem, and projects normally into the movement to engage the winding arbor. I am aware that it has been proposed to provide 'key-winding watches,' so-called, with a chambered stem, and to insert the key into this stem simply as a retaining pocket, wherein it is held by a spring to prevent it from dropping out. In this construction, however, the key does not project into the hollow of the case, nor is it desirable or necessary that the chamber in the stem shall connect with the hollow cavity of the case, except incidentally to provide room. Keys mounted in pockets in the stems in this manner do not, or need not, rotate. In the stem-winding pendant herein shown the key must project into the case, and must rotate; and it is not intended that it shall ever be withdrawn from the hollow of the stem, or be detached from the case."

The only claim of the patent upon which the charge of infringement is based is the first claim, as follows: "The combination, in a stem-winding watch, of the tubular stem; a key mounted to rotate in said stem, and to project into the movement and engage the winding arbor; a spring attached to one of these parts, and arranged to engage the other part to form a latch device, as shown; and the said winding arbor,—all arranged substantially as and for the purposes set forth." The alleged infringement is made under

the patent issued to W. W. Bradley, and assigned to John C. Dueber (No. 411,420), and dated September 24, 1889. The patentee declares that his invention consists in providing a watch-case pendant with a peculiar combination of devices that enables the push pin or stem to perform the threefold purpose of winding the watch, setting the hands of the same, and operating the case spring, the details of said devices being hereinafter more fully described, and then pointed out in the claims. The drawings of the patent are as follows:

We quote from the explanation of them given by the patentee: "Fig. 1 is an enlarged sectional elevation, showing the various members of my watch-case pendant separated from each other. Fig. 2 is an axial section, showing said parts fitted within the pendant, and the push pin held in its normal position by the action of the case spring. Fig. 3 is an enlarged axial section of the spring clutch, and a modified form of the keeper. A represents a portion of the 'center' of a hunting-case watch, and B is a pendant attached thereto; said pendant having at its inner end a smooth bore, C, opening into a screw-threaded chamber, D, of somewhat larger diameter than said bore, thus forming an annular bearing, D, in said pendant. The opposite or outer end of said chamber is open, and this end of the pendant is reduced in diameter so as to form a neck, E, and an annular shoulder, e; said neck having the hollow crown or knob, F, fitted around it, which knob is screw-threaded internally, as at f, to admit the screw, g, at the outer end of the shank, G, of the push pin or stem. h is a rounded or inclined shoulder formed at the junction of said shank with the spindle, H, of push pin, I; the latter having a shoulder, i, at its upper end, and a similar shoulder, i', at its lower end, which latter shoulder, i', is formed where said pin or stem, I, joins the square arbor, K. This arbor traverses a circular eye, 1, in the free end of the case spring, L, and is arranged to operate either the winding or setting mechanism in the usual manner. Engaged with the screw-threaded chamber, D, is a hollow nut to keeper, M, whose bore, m, is somewhat larger in diameter at top than at bottom, as more clearly seen in Fig. 3, and the upper end of this nut is nickel or slotted at m', m', to admit a suitable turning implement. This nut may either bear against the spring latch, or it may be coupled thereto; but, as seen in Fig. 2, said nut is screwed down until it comes in contact with an annular collar, N, at the inner end of said clutch, O; the latter having a series of longitudinal slots, o, extending from its upper end almost to said collar. Furthermore, the inner portion of this clutch is chambered out at P, thereby affording an annular shoulder, R, between said chamber and the spring prongs, p." Fig. 2 shows the parts properly fitted together, and in their normal position. "When the various parts of this pendant are properly fitted together, and occupy their normal positions, as seen in Fig. 2, the stress of spring, L, advances the push pin, I, and forces its shoulder, h, against the shoulder, R, of the clutch, thereby causing the crown, F, to recede a slight distance from the shoulder, e, in which position of the push pin the arbor, K, is in gear with the winding mechanism; but by pushing against the crown until it strikes the shoulder, e, the spring, L, will be bent sufficiently to liberate the 'front back' of the watch, and allow it to fly open, and by properly turning said crown the case will be wound in the usual manner. This free opening of the case spring and winding of the watch is due to the fact that the spindle, H, now occupies the chamber, P, of the clutch, while its prongs, p, surround the shank, G, but do not grasp the same. Therefore the opening of the case and winding of the watch can be performed without producing any frictional action of the spring clutch, but when the hands require setting sufficient force is exerted against the crown, F, to pull it forward until the shoulder, i, comes in contact with the inner end of collar, N, which limits the advance of the push pin, and brings its arbor, K, into communication with the setting mechanism. This advance or outward pull of the push pin or stem causes its rounded shoulder, h, to act as a wedge that gradually opens the clutch prongs, p, and allows the spindle, H, to be grasped by them, as seen in Fig. 4. Consequently the clutch has now a frictional hold around said spindle, and when the push pin is turned either to the right or left said clutch turns in unison therewith, because it is not engaged with the chamber, D; neither is it secured tightly within said chamber by the nut or other keeper, M. After the hands have been set, sufficient pressure is exerted against the crown, F, to overcome the grasp of the clutch, and force the push pin or stem back to its original position, where it again assumes its normal function of opening the case and winding the watch."

The court below held that the Colby patent was for a new and useful device, and was valid, and that the defendants' device was an infringement thereof, and, after the hearing upon the merits, entered a decree for a per-

petual injunction, and referred the question of damages to a master.  Pending the reference this appeal was taken, under section 7 of the court of appeals act, from the decree below, as an interlocutory order granting an injunction.

Chas. R. Miller and Robt. H. Parkinson, for appellants.

Lysander Hill and George S. Prindle, for appellees.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge (after stating the facts). The decree of the circuit court must be reversed for two reasons: First, because the Colby patent, in view of the state of the art, did not involve patentable invention; second, even if the Colby patent can be sustained, its scope is so narrow, in view of prior inventions, that the defendants' device is not an infringement.

The object of Colby's device was to permit the movement of a stem-winding watch to be lifted out of the case, and freed from the stem arbor or key, by withdrawing the key from its connection with the movement back into the stem, and so securing it in both its outer and inner positions in the stem that it could not be moved from either to the other without an effort. The outer and inner positions of the key were secured by spring latches. The spring latches were effected by a spring attached either to the inside of the stem, or to the key, the ends or shoulders of which took into or struck against annular grooves or shoulders on the other piece. It was old in the art to permit the movement of the stem-winding watch to be removed from the case by withdrawing the key back into the stem. This is shown in the Fitch patent issued October 28, 1879. It has the ordinary stem and stem arbor. The stem arbor projects into the movement, and engages the winding arbor. A spiral spring, working between a shoulder on the inner end of the stem arbor and the inner end of the pendant or stem, holds the stem arbor in engagement with the winding arbor. When the movement is to be removed, and it is desired to retract the stem arbor, the owner or operator pulls the crown of the stem arbor outward, overcomes the force of the spiral or helical spring, and withdraws the stem arbor into the stem sufficiently to permit the lifting of the movement out of the case. A similar patent granted to Fitch, with the helical spring placed inside the stem, instead of inside the case, was an earlier patent by the same inventor. The Fitch patent, it will be observed, had not the spring-latch feature of the Colby patent. The spiral spring operated merely to hold the stem arbor, by the constant force of the spring, in operation with the winding arbor; and the spring pressure had to be overcome by the operator, and continuously overcome, while the stem remained retracted. The Fitch patent does show, however, the retraction of the stem from one position to another for the purpose of releasing the movement, and it uses as an agent in maintaining one of the two positions a spiral or helical spring. It presents the same short stem arbor that we find in the Colby patent. The Lehman patent is for a stem-winding and stem-setting watch; that is, a watch in which the key in the stem extends into the movement, and may be adjusted

either to wind or to set the watch by its longitudinal movement in the stem. In order to maintain the key in the inner and outer positions in the stem, two annular grooves on the key are provided at its inner end within the case, and a spring latch which is secured in the movement takes into one or the other of these annular grooves, and holds the stem arbor in position either for winding or setting. The spring, like that in the Colby patent, is strong enough to hold the stem in position against any movement of the crown, except by special effort. The Lehman patent thus shows the spring latch inside of the case used upon the stem arbor to secure the inner and outer positions of the stem arbor against anything but special effort. The Lehman patent, however, does not provide for an easy removal of the movement from the case by retraction of the stem arbor. The Yager patent, invented in 1862, is a French patent for a stem winding and setting watch, in which the movement may be easily taken out of the case by a retraction of the stem. The inner end of the key or stem arbor, reaching beyond the stem inwardly, has two annular grooves. Inside the outer rim of the case is a split spring, which embraces the end of the stem arbor. As the stem arbor is pulled outwardly this spring takes into one annular groove of the arbor, and as the arbor is pressed inwardly it takes into the other, and thus secures a stationary position of the stem arbor, permits its rotation in either position, and prevents its disturbance except by special effort. There is no difference between the spring latch of the Yager patent, and the functions which it performs, and those which the spring latch in the Colby patent performs, except that the spring latch of the Colby patent is located inside of the stem, instead of being inside the case. We thus find in the prior art the use of the spring latch upon the stem for the exact purpose which Colby had in mind, namely, of securing the stem in two different positions,—the inner and outer positions,—from either of which the arbor could not be moved to the other position without special effort. Even if it required invention to change the location of the spring latch from its position inside the case, as shown in the Yager and Lehman patents, to one inside the stem, as in Colby's device, that change was also suggested in the prior art. It is found in the Fisher & Lucas patent. That was a patent of June 26, 1877. It was not for either a stem-winding or a stem-setting watch. It was a so-called key-winding watch, but the stem of the watch was used as the place in which to hold the key. When the key was to be used as such, it was removed entirely from the stem, and applied as an ordinary key in an old-style watch. When not thus used, the key fitted into the stem, and while in the stem operated as a push pin against the spring which held the case shut, and thus was used to open the case. The key had a crown like that of the stem arbor of a stem-winding watch. The stem did not open into the case of the watch, and the key did not reach through the side of the case into the movement, as in stem-winding watches. The key was secured in the stem by springs attached to the key, which had annular grooves in them, into which the projecting outer ends of the stem took, and prevented the key from

being removed from the stem except by a pull. This showed the use of the spring latch inside the stem to secure the key in a position from which it could not be moved except by special effort. It showed the spring latch operating between the stem and the stem arbor or key. Although the capacity of the key for rotation in the stem was not utilized in the Fisher & Lucas patent, it plainly had such capacity. It is true, the key was not used as a key while in its position inside of the stem, but it occupied the place where the ordinary stem arbor is; and, so far as the function of retaining the key in one position from which it could not be moved except by special effort, the spring and the groove, or, in other words, the spring latch, of the Fisher & Lucas patent, discharged the same function as the spring latch of the Colby patent. The Colby patent is a mere duplication of the same device, in the same place, for the same general purpose. By putting the Fisher & Lucas patent alongside the Lehman and Yager and the Fitch patents, one finds every element of the Colby patent discharging the same function without accomplishing any new result. The Colby device is possibly a neater form, and works in a smoother way, but this is all. It is questionable whether, without reference to the prior art, the use of a latch spring to hold yieldingly a shaft inside of a cylinder in two different positions at different times would involve patentable invention. Certainly it does not involve patentable invention, when we find the suggestions of every feature of it in the prior patents already referred to.

The fact that for a time the defendant was a licensee of the Colby patent cannot, of course, estop the defendant from disputing its validity in a suit for infringements charged to have taken place after the license was withdrawn. Such a fact, in a doubtful case, might have considerable evidential force as an admission of the validity of the patent by the licensee. Here, however, we do not have a case involving doubt. More than this, the license embraced the Fitch and the Fisher & Lucas patents, and the admission contained in the act of accepting the license thereby loses much of its weight.

Another ground relied upon, and strenuously pressed on the court, for holding that the Colby patent involves invention, is the fact that it has gone into very general use. The Colby device is used chiefly in stem winding and setting watches, and not in a stem-winding watch, for which it was invented. It is used in connection with movements made under the Church patent, which we had to consider in the case of Watch Co. v. Robbins, 22 U. S. App. 601, 12 C. C. A. 174, 64 Fed. 384. The in and out movement of the stem arbor of the Colby patent was, when united with the Church patent, readily adapted to shift the winding and hand-setting train from one engagement to the other; and, as the patents were owned by the same persons, the Colby device came to be largely used with the Church movement. Its extensive use is due rather to the meritorious character of the Church invention, than to the fact that it has supplied a long-felt want in the field of watchmaking. Extensive use is only an element to be considered in a case where patentability and invention are doubtful. Where, as here, the extended use can be attributed

to something other than the mere novelty of the device, it loses its evidential force.

2. Even if the Colby device is to be sustained as valid, the prior art is so close to it that its scope must be narrowly limited. The defendants' device does not contain a spring attached either to the stem or to the key. It is attached to a hollow nut or threaded cylinder, which moves with the rotation of the key, and saves the grinding of the spring ends in the annular grooves, or against the annular shoulders, and performs the same function in a somewhat different way. Unquestionably, if the Colby patent could be held to be a pioneer patent, and one requiring a broad construction, we should hold that the latch spring contained in the Colby patent is seen in the defendants' device. But the Colby patent must be limited to the particular form shown, and in this view there is a distinguishing difference in that the spring in the defendants' device is not attached to either the key or the stem. It is held in position inside of the stem in a different way,—a way which enabled the inventor to prevent the friction of the spring end against the stem or the stem arbor during the rotation of the stem arbor. This is enough to escape infringement. The learned judge at the circuit held otherwise. An examination of his opinion satisfies us that he gave much too wide a scope to the object and the result of the Colby patent, and that the benefits which he pointed out are due wholly to its connection with the Church movement in a stem winding and setting watch. Of course, Colby would be entitled to any benefit which might come from the use of his device in a stem-set watch, although he might never have contemplated its use in such a watch. But the argument that his device must have novelty and invention in it because of its extensive use must fail when it is seen that the extended use finds its explanation in the novelty and utility of the Church movement, with which it is sold, and not in anything either novel or strange in the mechanism of the Colby stem. The decree is reversed, at the cost of the appellees, with instructions to dismiss the bill.