LANE et al. v. WELDS et al.

(Circuit Court of Appeals, Sixth Circuit. December 4, 1899.)

No. 739.

1. JUDGMENT—RES JUDICATA—PERSONS CONCLUDED.
    In order that one not a party of record, nor in privity with a party, shall be concluded by a judgment, on the ground that he assumed the burden of the defense in the suit, his action in that regard must have been open, and known to the opposite party.

2. PATENTS—INVENTION—WIRE FENCES.
    The Hewitt patent, No. 316,458, for improvements in wire fences, the fence described being formed by a combination of crimped metal pickets,

and a series of cables formed of two wires twisted together, between which the pickets are held, is void for lack of patentable invention, as both elements were old, and the crimped pickets merely the equivalents of the notched or grooved wooden pickets known in the prior art.

3. SAME.

The Lane and Lane patent, No. 518,506, for an improvement in wire fences, which consists in incorporating in a wire picket fence crimped or corrugated wire pickets, with the reverse twisting of the strands of the longitudinal wires between the pickets, which was the usual mode of twisting such wires previously, when the fence was made in the field, whether the pickets were of metal or wood, is void for lack of invention.

4. SAME.

The incorporation upon an old art of a function of the mechanism commonly used to produce the fabric of the old art does not constitute invention which will sustain a patent.

5. SAME—COMMERCIAL SUCCESS.

The commercial success of a patented article is only one element to be considered, where patentability is otherwise in doubt.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

This is a bill brought to restrain infringement of letters patent No. 316,458, issued March 31, 1885, to one W. Hewitt, which has been assigned to the complainants, and letters patent No. 518,506, issued April 17, 1894, to J. and C. Lane, the complainants below and appellants here. Both patents are for improvements in wire fences. The bill avers that the validity of the patents and the fact of infringement is res adjudicata by reason of a decree in a former suit upon the same patents, between complainants and one William Price, the defense having been made for Price by the present defendants in their own interest. The answer denies infringement; denies that defendants were parties or privies to the former suit, or in any way estopped thereby; and denies the validity of the patents involved. The decree was for the appellees, the lower court finding that defendants were not estopped by the decree in the former suit with Price, and that the patents involved were void.

R. A. Parker, for appellants.

James Whittemore, for appellees.

Before TAFT, LURTON, and DAY, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

1. The decree against Price, establishing the validity of the two patents upon which this suit is brought, does not estop the present defendants from challenging the validity of those patents. Defendants were not parties or privies to that suit, and had no direct interest therein. B. A. Weld, one of the defendants, was the patentee of a fence-making machine, which was capable of making many different kinds of wire and wire and slat fences. The patentee, or the firm of which he was a member, it does not clearly appear which, sold to one Price one of the Weld fence machines. They also sold him some crimped or corrugated wire pickets, which were capable of being used in the construction of many kinds of wire fences, including those covered by the Hewitt and Lane patents. Price was sued for making the Hewitt and Lane fence with the Weld machine. Neither the Weld fence machine nor the crimped pickets infringed either patent, as neither patent included any mechanism for the construction of the fence or the crimped or corrugated picket, except so far as such

pickets were one element in the fences covered by the claims of those patents. In fact, crimped or corrugated wire pickets were old, and could not have been the subject of any patent as an article of manufacture. Weld, therefore, had no interest in the suit of Lane and Lane against Price, except in so far as it limited the use of the Weld machine to fences not covered by the two patents owned by Lane and Lane, or to those having licenses under those patents. The claim that B. A. Weld, either for himself or the firm of which he was a member, assumed to defend that suit, and thereby estopped himself, is not satisfactorily made out. The most that can be said is that he at one time promised to defend same, and did pay five dollars to the solicitor employed by Price to obtain copies of the patents claimed by Lane and Lane. He, however, declined to carry out this promise, and refused to pay the retainer fee of counsel or the expense incident to making the necessary patent-office investigations. When Price found that Weld would not defend the suit, he abandoned the case, and suffered a decree to be taken upon an agreement by which the complainants in that suit waived an assessment of damages and paid the costs.

Aside from the unsatisfactory character of the evidence relied upon as establishing the fact that the defendants, or any one of them, did defend said suit, even so far as any defense was made, there is no evidence whatever going to show that the complainants in that suit knew anything whatever as to the interference of the present defendants with the defense of that suit. Indeed, it does not appear that the complainants in the Price suit even knew of the relation of Price to either B. A. Weld, or Weld & Co., or of the license which Price held under them to use and sell their machine. An estoppel must be mutual. If the defendants did not openly and avowedly, to the knowledge of the complainants, undertake the defense of that suit, the complainants would not have been estopped by the decree, if adverse to them, in a subsequent suit against the defendants. The principle is correctly stated thus in Herm. Estop. p. 157:

"If one not a party of record, nor in privity with a party to a judgment, desires to avail himself of the judgment as an estoppel, on the ground that he in fact defended the action resulting in the judgment, he must not only have defended that action, but must have done so openly, to the knowledge of the opposite party, and for the defense of his own interests. That he employed an attorney who appeared for the defendant of record, and appeared as a witness for the defendant, is not sufficient."

In Andrews v. Pipe Works, 19 C. C. A. 548, 76 Fed. 166–173, 36 L. R. A. 139, a case decided by the court of appeals for the Seventh circuit, in reference to an estoppel originating in the defense of a suit to which the party against whom the estoppel was pleaded was not a party of record, the court, speaking by Woods, C. J., said:

"Estoppels in such cases, as in others, must be mutual, and it is not to be considered that Andrews and Whitcomb became bound by the decree, by reason of their participation in the defense, unless their conduct in that regard was open and avowed, or otherwise known to the opposite party, so that it, too, was concluded, or would have been by an adverse judgment. Herm. Estop. p. 157; 2 Van Fleet, Former Adj. § 523; 2 Black, Judgm. § 540; Freem. Judgm. § 189; Lacroix v. Lyons (C. C.) 33 Fed. 437; Schroeder v. Lahrman, 26 Minn. 87, 1 N. W. 801; Association v. Rogers, 42 Minn. 123, 43 N. W. 792; Brady

v. Brady, 71 Ga. 71: Majors v. Cowell, 51 Cal. 478; Allin's Heirs v. Hall's Heirs, 1 A. K. Marsh. 525."

In Cramer v. Manufacturing Co., 35 C. C. A. 508, 93 Fed. 636, 637, where a like plea had been sustained by the court below, that court, speaking by Gilbert, C. J., said:

"In so holding, the circuit court applied the well-settled rule that one who, for his own interests, assumes the defense of an action, is bound by the judgment as if he had been a party thereto or in privity with the defendant. But it must not be overlooked that the rule is subject to the limitation that, in order that one not a party who has assumed the burden of the defense of an action shall be bound by the judgment therein rendered, his connection with the defense must be open and known to the opposite party."

2. The circuit court did not err in holding void both the Hewitt patent, No. 316,458, and the Lane and Lane patent, No. 518,506. The only claim of the Hewitt patent was for a new article of manufacture, "a metallic fabric composed of a series of corrugated, kinked, or crimped strips, rods, or pieces of metal, and of a series of wire cables, the strands of which, respectively, embrace and bind in each strip independently of every other strip, substantially as shown and described." The fence of the Hewitt patent in suit is shown by Fig. 2 of the patent, and the crimped picket by Fig. 4, both of which are shown below:

The specifications recite that "the office of the corrugation, kinks, or bends in the strips is to form seats for and retain against displacement the strands or wires composing the cables, which latter, in being twisted about the strips, lodge, so to speak, or seat themselves, with

99 F.—19

respect to given corrugations of said strip, and so remain in position." Fences wholly of wires were old. Examples are shown in patent No. 70,946 and No. 101,816 to W. R. Boerner. Fences of wire, with pickets of wood, were also old. Such fences are shown as common in the fence-machine patents to Fultz, No. 298,368, and in that to Middaugh & Wilcox, No. 309,724, as well as in patents for particular forms of such fences, examples of which are to be seen in patent to Thomas, No. 267,948, and to Lyne, No. 300,093. It is obvious that the substitution of metal for wooden pickets did not involve invention, inasmuch as both materials had long been used in the construction of pickets for wire fences, each material being a well-known substitute for the other.

If there is any patentable invention in Hewitt's wire fabric, it is in the combination of corrugated or crimped pickets and a series of cables formed of two wires twisted together, the pickets being held against displacement by the mode in which the strands of the cable seat themselves on opposite sides of each picket in the act of twisting. The corrugated or crimped picket used by Hewitt was old. It is found in the fence of Boerner's second patent, though not held in place as in Hewitt's fence. The patent of Seitzinger of 1871 is for a machine for crimping "square or round iron or wire on the edge before it is woven for fences, railing, coal screens," etc. The only office of the crimp or kink in the picket was to provide seats for the transverse wires to lodge themselves in the act of twisting, and thereby prevent slipping or other displacement. The same office was discharged by the angles or curves in the wire pickets of Boerner's first patent, though Boerner there limited himself to angles in opposite directions, the pickets being so placed in the construction of his fabric that two pickets would pass through the same twist in the crossing cable. But the function of the angle or bend was to prevent the embracing wires from slipping by furnishing them seats in which they might lodge themselves. Some method of locking wires crossing to prevent displacement of the perpendicular wire has always been necessary, and the evidence shows that, where two pairs of wires cross at right angles in wire fabric intended for screens, railings, or fences, it was old to provide the perpendicular wire with a crimp, bend, angle, or corrugation of some kind at the point of intersection, whereby the horizontal strands might find seats or places in which they might tightly lodge themselves, and bind the pickets against displacement. In an earlier patent granted to Hewitt, applied for at same time with that in suit, he provided against this displacement by making his pickets in the form of a spiral. The same necessity existed in fences when the pickets were of wood. Displacement was guarded against in some cases by notches, or grooves in the slat at points of intersection. This plan Hewitt says in his specifications was old. In others, the twisting of the strands of transverse wire against the sharp corners of flat or square wooden pickets effected a certain lodgment in the soft wood, and thus held the pickets firmly until decay of the wood should loosen them. To guard against the effect of water settling in the notches or grooves cut in the wood of the pickets, and

thus inducing decay and consequent looseness, Thomas, in his patent, No. 267,948, for a wire fence with wood pickets, provided pickets channeled around their entire surface, which answered the double purpose of carrying water, and at the same time furnishing a plurality of sharp ridges into which the binding wires would bury themselves and hold against displacement. Examples of methods adopted for providing the binding or twisted wires with seats in the wood palings of old forms of wire fence are seen in the patents for machines for constructing wire fences in the field granted to Fultz by patent No. 298,368, and to Middaugh and Wilcox, No. 309.724. All that Hewitt did was to take the well-known form of a crimped or kinked picket, and twist his transverse wires around it, just as had been common in fences of wire with wooden slats or pickets. This was not such a step as to constitute invention.

3. The Lane and Lane patent is equally void of invention. The only difference pointed out between the two earlier Hewitt patents and that patent lies in the fact that its claims describe the strands as being "alternately twisted upon the pickets from right to left and left to right." This limitation was inserted after the application had been rejected upon a reference to the Hewitt patents. After being thus amended, it was again rejected upon a reference to a patent to Moore, No. 17,692, and one to Matlock, No. 385,467. In the latter the reverse twisting between pickets is expressly described as one element in the claim. This reverse twisting between or on the pickets was confessedly old, and this admission was made by the patentees in a paper filed to obtain a reconsideration of the application, and the same admission is made now by counsel. Indeed, it is shown that neither the "spiral picket" fence of the first Hewitt patent, nor the "corrugated or crimped" picket fence of the second Hewitt patent, could be made in the field by any of the numerous fence machines which antedated Lane and Lane, without reversing the twisting between the pickets. Unless this was done, the strands in advance of the machine would become so twisted as that the machine could not move along the wires. This blocking of the machine might have been prevented by using a swivel at the point of finishing, but this would necessitate a new operation. The fact remains that the usual mode of constructing a wire fence, or a wood and wire fence, in the field, was to reverse the twisting between each picket. To allow a patent upon the result of this operation would be to find novelty in the usual mode of construction, and in a result which was commonly indispensable to the use of the usual mechanisms by which such fences were built. But it was insisted in the patent office that this usual mode of reversing the twist between pickets "gave no hint whatever of the fine results which are secured by incorporating with such reverse twisting the convaluted picket," and that, though "the invention is extremely narrow, yet, as it does not seem to be exactly met and the exact results obtained," the claim, as limited, should be allowed. Upon this argument the patent seems to have been issued. To this conclusion we cannot agree. The three forms of pickets preferred by Lane and Lane, and the results obtained by this operation of reverse twisting, are shown by Figs. 2, 3, and 4 of the patent, as follows:

Fig. 2 shows what the patentees describe as a "wire spiral." Fig. 3 shows a "corrugated" picket, and Fig. 4 the "convaluted" picket. The specifications state: "The action of twisting thereby compels the pickets to assume the positions shown in Figs. 2 and 4, depending on whether the spirally twisted pickets or the convaluted pickets are used; the principle, however, being the same in either case." The so-called "convaluted" picket is substantially the "crimped or kinked" picket of the second Hewitt patent. Whether simply "corrugated," "convaluted," "crimped," "kinked," "spiral," or bent into "angles," the office is the same, namely, to furnish seats or lodging places for the binding wires, and thus prevent slipping. They were all old forms and equivalents for the notches or grooves or horizontal channels cut in wood pickets or pailings for the same purpose. No new result was reached, and no new method of producing the result is shown. If it was old to reversely twist the wires upon each picket, it must be evident that the same "fine result" asserted for the claims of the Lane and Lane patent must have resulted whenever any "crimped," "kinked," or "corrugated" picket fence was constructed in the field by any of the old fence machines, which could not be operated without reversing the crank so as to reversely twist between each picket. That which was commonplace, whether as a result directly sought or incident to a usual mode of construction, cannot be novel. It is, in effect, an effort to incorporate upon the old art a function of the mechanism used in producing the fabric of the old art. That this fabric has gone into extensive use is an unsafe criterion by which to judge its novelty. Other causes have doubtless co-operated in creating a large sale. The commercial success of a patented article is only one element to be considered where patentability is otherwise in doubt. Manufacturing Co. v. Robbins, 43 U. S. App. 391, 21 C. C. A. 198, 75 Fed. 17; McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800. The decree holding both patents void and dismissing the bill must be affirmed.