APPLE v. AMERICAN SHOE MACHINERY & TOOL CO.

(Circuit Court of Appeals, Eighth Circuit. February 28, 1916.)

No. 4500.

1. PATENTS ⟨⟩328—INVENTION—SKIVING MACHINE.

The Medalie patent, No. 1.010,065, for a leather skiving machine, is void for lack of patentable invention and anticipation in the prior art.

2. PATENTS ⟨⟩12—INVENTION—IMPROVEMENT PATENTS.

A mere change in the manner of taking out the knife of a skiving machine for the purpose of sharpening does not produce a new result, within the meaning of the patent law.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 10; Dec. Dig. ⟨⟩12.]

3. PATENTS ⟨⟩35—EVIDENCE OF INVENTION—COMMERCIAL SUCCESS.

That a patented machine has gone into extensive use is an unsafe criterion by which to determine patentable invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. ⟨⟩35.]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit in equity by the American Shoe Machinery & Tool Company against Nathan Apple. Decree for complainant, and defendant appeals. Reversed.

Charles S. Cairns, of Minneapolis, Minn., for appellant.

T. Percy Carr, of St. Louis, Mo. (James A. Carr and Amasa M. Holcombe, both of St. Louis, Mo., on the brief), for appellee.

Before ADAMS and CARLAND, Circuit Judges, and TRIEBER, District Judge.

CARLAND, Circuit Judge. Appellee as the owner of United States patent No. 1,010,065, issued to it November 28, 1911, as the assignee of Benjamin Medalie for an improved leather skiving machine, brought this action to enjoin appellant from infringing claims 1, 2, and 3 of said patent. The appellant is a seller of a skiving machine known to the trade as the "Progressive skiver," which is manufactured by the Progressive Shoe Machinery Company of Minneapolis, Minn. After a hearing on the merits a decree was entered in the trial court in favor of appellee, and appellant appeals.

[1] There can be no question on the evidence, but that the structure of appellant infringes the patent, as it performs the same function by the same means and in the same way as the patented structure. The question for decision is whether the patent in suit was anticipated by the patents cited in appellant's answer, and more particularly by the British patent to Mudd and Pochin, No. 8,136, application filed April 29, 1892, sealed July 11, 1893. The Mudd and Pochin patent is physically illustrated by the "improved Tripp skiver," which is in evidence. Medalie in his specification said:

"This invention relates to skiving machines, and it has for its principal objects to produce a simple and efficient machine for splitting and skiving or beveling strips or pieces of leather and similar fibrous materials, to provide for initially adjusting the cutting knife for a certain thickness of material and the automatic compensation of the knife for variations in the thickness

of material passed through the machine, and to attain certain advantages hereinafter more fully appearing."

Claims 1, 2, and 3 of the patent in suit are as follows:

"1. A skiving machine comprising a horizontally journaled fixed feed roller, a horizontally journaled idler resiliently supported in co-operative relation to said feed roller vertically thereunder, a cutting knife, a knife holder extending transversely at the rear of said feed roller and idler in the plane of their meeting peripheral portions and pivoted on one side to a fixed support and pivoted at its opposite side to the resilient support for said idler, whereby the position of the knife is automatically varied to compensate for various thicknesses of work which is passed between said feed roller and said idler.

"2. A skiving machine comprising a horizontally journaled fixed feed roller, an idler resiliently supported in co-operative relation to said feed roller, a cutting knife approximately in the plane of the meeting peripheral portions of said feed roller and idler, a holder for said knife pivoted at one side to an adjustable normally stationary support which is movable in a direction transversely with respect to the axes of said feed roller and idler, said holder being pivoted at its opposite side to an adjustable member on the resilient support for said idler, whereby the knife may be adjusted at different angles initially for a certain thickness of work and whereby, also, said knife automatically accommodates itself for different thicknesses of work which is passed between the feed roller and idler.

"3. A skiving machine comprising a horizontally journaled feed roller, a co-operating feed roller beneath said first mentioned roller, said second mentioned roller being journaled on a vertically movable spring-pressed support, a knife arranged with its cutting edge in co-operative relation to said feed rollers so as to receive the work end-wise, a knife-holder pivoted at one side to a vertically adjustable normally stationary support and pivotally and adjustably secured at its opposite side to the spring-pressed support for the lower feed roller, so that said knife holder may be set initially at different angles for a given thickness of work and automatically compensates for a variation in the thickness of the work, and means for adjusting the knife on its holder with respect to the feed rollers."

In view of the evidence, counsel for appellee very properly make the following statement in their brief:

"There is no use in burdening the court with a detailed consideration of elements which are not claimed to be new or to in any wise distinguish Medalie's machine from others which preceded it. We therefore freely concede that, for substantially 35 years prior to Medalie's invention, the broad principles were well known of feeding leather to a skiving knife between feed rollers; also of having one roller fixed and the other spring-pressed, so as to permit the rollers to automatically accommodate themselves to the various thicknesses of leather to be skived; and, finally, of having the angle or tilt of the knife automatically adjusted for different thicknesses of leather. These principles were not merely disclosed by paper patents, but were incorporated into skiving machines in actual use in the shoe factories of the country and, are fully exemplified, for instance, in the 'improved Tripp skiver' in evidence in this case. The complainant has no quarrel with the defendant here on the score of utilizing any of these principles. Medalie has, however, produced an absolutely new and ingenious method of mounting the knife, which distinguishes his machine from all prior machines and which produces a different and better result, *and it is in this that his invention consists*."

[2] The invention, if any, in the Medalie patent, is in the method of mounting the knife upon a knife-holder, which permits the knife to be taken out without removing the holder. In the Tripp machine, if you desire to remove the knife, it is necessary to remove the holder. The question is thus reduced to a narrow compass, namely: Was it invention to simply change the manner of removing the knife, or was this change one which a person skilled in the art would ordinarily

make. The only reason for removing the knife is to sharpen it, it being contended that the knife in the Medalic machine may be re- moved for that purpose quicker and easier than in the patented ma- chine. It is also claimed that the removal of the knife without re- moving the knife-holder is a new result, accomplished by entirely new means; but the Medalie machine skives leather just the same as the Tripp machine, which physically illustrates the Mudd and Pochin patent. The mere change in the manner of taking out the knife for the purpose of sharpening is not a new result within the meaning of the patent law, and in our opinion is not invention. Moreover, the fact that the knife-holder in the Medalie machine is pivotally connected to the other parts of the machine, and the knife is independently adjustable on the knife-holder, is not new.

In the Helms patent, dated March 15, 1870, the knife is indepen- dently adjusted on the knife-holder; and the same is true in the Wickersham patent, dated June 1, 1886; also the Vrooman patent, dated February 27, 1872. We are of the opinion that it would oc- cur to any mechanic who was skilled in the art of skiving machines, in view of the Tripp skiver, to connect the knife-holder to the vertically adjustable plates by screws, instead of connecting the knife-holder by notches which engage the knife.

[3] It appears from the evidence that, after the patent in suit was issued, many sales of the patented machine were made by the appel- lee, and it is argued from this fact that a new use was supplied, or a new want satisfied. It also appears from the evidence that the older machines were used by shoe manufacturers; that they were larger and more expensive, and were operated by power rather than by hand. The Medalie machine was made small, and the price there- of was about one-half of the older machines, so that it could be used in small repair shops. This we think would fully account for the increase in sales. Moreover, the making of many sales is an un- safe criterion of patentable invention.

"That which was commonplace, whether as a result directly sought or in- cident to a usual mode of construction, cannot be novel. It is, in effect, an effort to incorporate upon the old art a function of the mechanism used in producing the fabric [fence] of the old art. That this fabric has gone into extensive use is an unsafe criterion by which to judge its novelty." Lane v. Welds, 99 Fed. 286–292, 39 C. C. A. 528, 534.

"That which is common and well known is as if it were written out in the patent and delineated in the drawings." Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177.

"Every inventor or constructor is presumed by the law to have borrowed from another whatever he produces that was actually first invented and con- structed or used by that other in the United States, or was previously patent- ed or described in a printed publication in any country, after having been invented by another." Walker on Patents (4th Ed.) § 43.

In Aron v. Manhattan Railroad Company, 132 U. S. 84, 10 Sup. Ct. 24, 33 L. Ed. 272, the Supreme Court approved the following lan- guage used by Judge Wallace in the court below:

"The patentee is entitled to the merit of being the first to conceive of the convenience and utility of a gate opening and closing mechanism which could be operated efficiently by an attendant in the new situation. His right to a patent, however, must rest upon the novelty of the means he contrives to carry his idea into practical application. It rarely happens that old instru-

mentalities are so perfectly adapted for a use for which they were not originally intended as not to require any alteration or modification. If these changes involve only the exercise of ordinary mechanical skill, they do not sanction the patent; and in most of the adjudged cases, where it has been held that the application of old devices to a new use was not patentable, there were changes of form, proportion, or organization of this character which were necessary to accommodate them to the new occasion. The present case falls within this category."

In Specialty Manufacturing Company v. Fenton Manufacturing Company, 174 U. S. 492, 19 Sup. Ct. 641, 43 L. Ed. 1058, the Supreme Court said:

"Putting the Hoffman patent in its most favorable light, it is very little, if anything, more than an aggregation of prior well-known devices, each constituent of which aggregation performs its own appropriate function in the old way. Where a combination of old devices produces a new result such combination is doubtless patentable; but where the combination is not only of old elements, but of old results, and no new function is evolved from such combination, it falls within the rulings of this court in Hailes v. Van Wormer, 20 Wall. 353, 368 [22 L. Ed. 241]; Reckendorfer v. Faber, 92 U. S. 347, 356 [23 L. Ed. 719]; Phillips v. Detroit, 111 U. S. 604 [4 Sup. Ct. 580, 28 L. Ed. 532]; Brinkerhoff v. Aloe, 146 U. S. 515, 517 [13 Sup. Ct. 221, 36 L. Ed. 1068]; Palmer v. Corning, 156 U. S. 342, 345 [15 Sup. Ct. 381, 39 L. Ed. 445]; Richards v. Chase Elevator Co., 158 U. S. 299 [15 Sup. Ct. 831, 39 L. Ed. 991]. Hoffman may have succeeded in producing a shelf more convenient and more salable than any which preceded it, but he has done it principally, if not wholly, by the exercise of mechanical skill."

Using the word "Medalie" in the place of "Hoffman" in the above excerpt, the language is quite pertinent to the present case. We are of the opinion, therefore, that the patent in suit is void for want of patentable invention, for the reason that the same had been anticipated by the patents cited by appellant, particularly the British Mudd and Pochin patent.

The decree below will be reversed, with directions to dismiss the bill; and it is so ordered.