## FERRO CONCRETE CONST. CO. v. CONCRETE STEEL CO. et al.

(Circuit Court of Appeals, Sixth Circuit. May 6, 1913.)

### No. 2,298.

1. PATENTS (§ 310*)—"INVENTION"—DETERMINATION ON DEMURRER.

"Invention" is a question of fact, and, when it is raised on demurrer, must be determined from what is shown on the face of the patent, aided by matters of common and general knowledge at the time of the alleged invention of which the court may take judicial notice, as to which it may reinforce its recollection by antecedent and reliable publications.

· [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 507–540; Dec. Dig. § 310.*

For other definitions, see Words and Phrases, vol. 4, pp. 3749–3754.]

2. PATENTS (§ 41*)—INVENTION—EVIDENCE.

In seeking to ascertain on which side of the dividing line between invention and mechanical skill the device of a patent belongs, if it shall appear that through a new combination a novel and useful result is achieved, the court is not to be misled by the apparent simplicity of the device nor by the fact that the elements of the combination are old.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 48; Dec. Dig. § 41.*]

3. PATENTS (§ 328*)—VALIDITY—CONCRETE FLOOR.

The Nolte patent, No. 859,511, for a process of constructing a concrete floor by which the nailing sleepers are first placed in position and attached to the temporary floor by brackets and the concrete laid in a single layer, *held* not void on its face for lack of invention.

Appeal from the District Court of the United States for the Southern District of Ohio, Western District; Howard C. Hollister, Judge.

Suit in equity by the Ferro Concrete Construction Company against the Concrete Steel Company and the Isaac Faller's Sons Company. Decree for defendants, and complainant appeals. Reversed.

Murray & McCallister, of Cincinnati, Ohio (W. F. Murray, of Cincinnati, Ohio, of counsel), for appellant.

J. N. Ramsey and Charles A. J. Walker, both of Cincinnati, Ohio, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. The only question of importance in this case is whether a certain patent is void upon its face for lack of invention. The suit was for infringement of letters patent No. 859,511, for "concrete floor construction," granted to appellant as assignee of the inventor, Louis H. Nolte. Apart from some minor features, the bill of complaint as amended is in the usual form. It was dismissed upon demurrer, and the plaintiff below appeals. The de-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

clared object of the invention is "a construction which will simplify and render less expensive the process of laying wooden sleepers in the

surfaces of concrete floors." The accompanying drawings, as in substance described in the specification, show: (1) A horizontal view of a floor in course of construction, with brackets sustaining the sleepers, and all resting on the temporary floor; (2) a perspective view of part of a sleeper and its supporting brackets; and (3) a horizontal sectional view of a concrete floor construction. It is stated in the specification that the customary method of making concrete floors had been—

"* * * to spread a layer of concrete upon the temporary flooring, to allow this concrete to harden, then to lay the wooden sleepers, which afford a nailing surface, upon this first layer of concrete, and then to fill in around the sleepers with another layer of concrete."

The patented method described is: First, to nail rows of brackets to the sleepers; next, to nail the brackets to the temporary floor; and then to place the concrete about the brackets and sleepers so as to leave the upper faces of the sleepers exposed. This follows:

"It is seen that the process of constructing the floor with my supporting brackets for the sleepers, is a continuous one, that is, that the concrete is laid at one operation. Besides simplifying the method of forming the flooring, the brackets distribute the strain due to the nailing of the permanent

floor to the sleepers, over a greater area of concrete and thus prevent any tendency to crack in the same in securing the permanent floor in place."

There is but one claim:

"In a concrete floor in the course of construction, the combination of the temporary floor or centering, sleepers, brackets secured in rows upon the floor beneath and supporting the sleepers, and concrete surrounding the brackets and the sleepers, leaving the upper faces of the sleepers exposed."

Profert is made in the bill of the letters patent, and the record contains a copy. Many decisions are cited by counsel, especially for the appellees, in support of their respective claims of validity and invalidity of the patent. The decisions are, of course, helpful so far as they announce settled and apposite principles of law; but the ultimate assistance they afford must depend upon how the subjects they treat are related to the subject of the instant case. It could serve no useful purpose to discuss these cases, for the applicable principles of law are not in dispute; and we do not find that a patented subject closely kindred to the present one was involved in any of the cases cited.

[1] Necessarily a question of invention is one of fact. Herman v. Youngstown Car Mfg. Co., 191 Fed. 579, 582, 112 C. C. A. 185 (C. C. A. 6th Cir.). Where this question is disposed of upon demurrer, as here, the sources of knowledge are confined to the letters patent and those related matters of which the court may take judicial notice, not to speak of relevant facts well pleaded. When facts of common and general knowledge tend to show that the patented device is old and so has been anticipated, or, when compared with familiar objects of a kindred character, it appears to be a product of mere mechanical skill, the quality of invention may safely be determined and should be on demurrer; and the court may reinforce its recollection of facts that were of common knowledge at the time the patent was applied for, by antecedent and reliable published matter—always distinguishing, however, between its own special knowledge and what is considered to be the knowledge of others, where the device in question has been in use. American Fiber-Chamois Co. v. Buckskin-Fiber Co., 72 Fed. 511, 512, 18 C. C. A. 662 (C. C. A. 6th Cir.); Charles Boldt Co. v. Nivison-Weiskopf Co., 194 Fed. 871, 874, 114 C. C. A. 617 (C. C. A. 6th Cir.). The present case affords a limited field for the exercise of judicial knowledge. No prior patents or history of the earlier art, if there be any, have been so brought to our attention as to be available on this hearing. For the most part, learned counsel themselves are not in harmony as to what is and what is not applicable common knowledge here, and they are altogether at odds as to analogies. The importance, then, of the specification in this instance cannot be ignored.

The specification shows, as stated, that the old method of construction involved two layers of concrete, the second one being laid after the first had hardened; and that the sleepers rested on the first layer and were held in place by the second layer. The patented method requires the sleepers to be fastened to the brackets and the brackets to the temporary flooring, before the laying of concrete is commenced; and only one layer of concrete—involving "one operation," as stated by the inventor—is required or laid to complete the concrete floor, so as to

leave the upper faces of the sleepers exposed. The quality of strength —the sustaining capacity of the floor—would seem to be decidedly greater in the new than in the old method; while, according to the inventor's declared object, the expense of the new method would appear to be less than that of the old. Further (and this, if true, clearly avoids impairment in construction), the inventor states that the "brackets distribute the strain due to the nailing of the permanent floor to the sleepers, over a greater area of concrete," and so prevent any tendency to crack the concrete. True, no dimensions for sleepers and brackets are stated in the specification; nor is the material mentioned of which the brackets are composed, although it may fairly be inferred from the drawings that they are of metal; and the bracket legs spread from a horizontal top, corresponding in length with the width of the beam, to flanges at the base and through which the brackets are nailed to the temporary floor. The sizes of sleepers and brackets would naturally be suggested by the purpose of the particular floor structure. If the statements of the specification are not true, they should be met by answer and evidence, not by admission.

[2] However, it is urged that these qualities do not involve invention, but simply mechanical skill. Insistence upon this distinction is by no means novel; yet the difficulty and obscurity of the distinction persist, because the dividing line baffles either definition or rule of safe general application. In seeking to ascertain on which side of the dividing line between invention and skill the device in issue belongs, if it shall appear that through a new combination a novel and useful result is achieved, the court is not to be misled by the apparent simplicity of the device, nor by the fact that the elements involved are old. As Justice Bradley said in Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177:

"This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention. It was certainly a new and useful result to make a loom produce 50 yards a day when it never before had produced more than 40; and we think that the combination of elements by which this was effected, even if those elements were separately known before, was invention sufficient to form the basis of a patent."

See, also, Kellogg Switchboard & Supply Co. v. Dean Electric Co., 182 Fed. 991, 105 C. C. A. 545 (C. C. A. 6th Cir.), and cases cited.

[3] Admittedly the combination described in the claim of the patent is new. That it produces a new and beneficial result has been sufficiently pointed out; indeed, defendants admit by their demurrer that they construct and sell concrete floors made according to this invention. They give to this floor construction "the tribute of its imitation." Diamond Rubber Co. v. Consol. Tire Co., 220 U. S. 428, 441, 31 Sup. Ct. 444, 450 (55 L. Ed. 527). We conclude that the patent must on demurrer be treated as entitled to the rank of invention. N. Y. Belting Co. v. N. J. Rubber Co., 137 U. S. 445, 450, 11 Sup. Ct. 193, 34 L. Ed. 741; American Sulphite Pulp Co. v. De Grasse Paper Co., 157 Fed. 660, 662, 87 C. C. A. 260 (C. C. A. 2d Cir.). The ques-

tions not passed on are of a character that may be disposed of by amendment below.

The decree below will be reversed, with costs, and the cause remanded, with instructions to overrule the demurrer and require the defendants to answer.