KEENE et al. v. NEW IDEA SPREADER CO.

(Circuit Court of Appeals, Sixth Circuit. March 17, 1916.)

No. 2690.

1. PATENTS ⚖69—PATENTABLE INVENTIONS—"DESCRIBED IN PRINTED PUBLI-
CATION."
     A device is "described in a printed publication," within the meaning of
Rev. St. § 4886 (Comp. St. 1913, § 9430), and therefore not patentable as a
new invention, where it is shown in the drawings of a prior patent.

     [Ed. Note.—For other cases, see Patents, Cent. Dig. § 84; Dec. Dig.
⚖69.]

2. PATENTS ⚖16—INVENTION—QUESTION OF FACT.
     The question whether a patented device is the result of invention, or
only mechanical skill, is one of fact.

     [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 14, 15; Dec. Dig.
⚖16.]

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. PATENTS ☞26(1)—INVENTION—COMBINATION OF OLD ELEMENTS.
  The fact alone that the elements of a combination claim are old is not enough to invalidate it.
  [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. ☞26(1).]

4. PATENTS ☞26(2)—"INVENTION"—COMBINATION OF OLD ELEMENTS.
  Where the elements of a combination claim were not merely old, but in point of equivalency had for years been devoted to the same uses in the same art and with substantially like results, the combination shows mechanical skill, rather than invention.
  [Ed. Note.—For other cases, see Patents, Cent. Dig. § 29; Dec. Dig. ☞26(2).
  For other definitions, see Words and Phrases, First and Second Series, Invention.]

5. PATENTS ☞34—INVENTION—PRIOR PATENTS AS EVIDENCE.
  While a patented combination may not be anticipated by any single prior patent, such patents, showing elements of the combination, are a part of the prior art, properly to be considered on the question whether invention or only mechanical skill was required to make the combination.
  [Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. ☞34.]

6. PATENTS ☞328—INVENTION.
  The Keene patent, No. 782,564, for an axle, used chiefly in the construction of manure spreaders, held void for lack of invention in view of the prior art.

7. PATENTS ☞19—INVENTION—IMPROVEMENT IN DEGREE.
  The mere carrying forward of an original conception, resulting in an improvement in degree simply, is not invention.
  [Ed. Note.—For other cases, see Patents, Cent. Dig. § 19; Dec. Dig. ☞19.]

8. PATENTS ☞30(1)—EVIDENCE OF INVENTION—COMMERCIAL SUCCESS.
  Commercial success of a patented article cannot aid claims of the patent which are clearly lacking in invention.
  [Ed. Note.—For other cases, see Patents, Cent. Dig. § 34; Dec. Dig. ☞30(1).]

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

Suit in equity by Louis A. Keene and Mott R. Pharis against the New Idea Spreader Company. Decree for defendant, and complainants appeal. Affirmed.

Luther L. Miller, of Chicago, Ill. (L. B. Smith, of Chicago, Ill., of counsel), for appellants.

F. S. Stitt and R. S. & A. B. Lacey, all of Washington, D. C., for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and COCHRAN, District Judge.

WARRINGTON, Circuit Judge. This is an appeal from a decree in a patent suit dismissing the bill for want of equity. The bill is in the usual form, alleging infringement by defendant of letters patent No. 782,564, issued February 14, 1905, to Louis A. Keene, and in which Mott R. Pharis had an equitable interest from the date of the

issue of the patent. The answer consists of specific denials, including one of alleged infringement, and also of further distinct defenses: (a) That the claims of the patent are for aggregations; and (b) that in view of the prior art and certain prior use the patent is void for want of invention. If the claims in issue are valid, we think the denial of infringement cannot, under the present record, be sustained. We are thus required to pass upon the validity of the claims in suit. It is declared in the first two paragraphs of the letters patent that the patentee had "invented certain new and useful improvements in axles," and that the object of the invention was to produce "an improved axle for vehicles wherein simplicity of construction is combined with great strength." The first four claims of the letters patent consist of combinations which embrace an axle member comprising two horizontal arms and a central arched portion, two chord members, and certain bolts and clips with threaded ends and adjustable nuts. These claims are, as respects the "two chord members," the narrowest in the patent; the defendant has not used these two chord members; and so infringement of the first four claims is not even alleged. The remaining claims, 5 to 9, inclusive, are the only ones in issue. These claims associate in a running gear certain additional elements, expressly named, with some of the elements of the first four claims. For instance, both claims 5 and 6 in express terms add a tongue and braces and connect such members each with the axle; claims 7, 8, and 9 respectively, add to the parts thus far mentioned a fifth wheel mounted on the arch of the axle and supporting a "forward bolster." Figure 1 of the drawings shows the running gear with all these parts *in place,* and with a running wheel at each end of the axle; the parts so named are also described in the specification. Further, the specification states that "by reason of the arched construction the axle is adapted to vehicles having small forward wheels," and the only use shown to have been made of the patented parts is in the front running gears of manure spreaders. Plainly then, the form of vehicle so referred to comprises a front running gear, which can readily be turned either way without interfering with the body of the vehicle.

A better understanding of the patented structure may be gained through description of the parts grouped in the several claims in dispute. Claims 5 and 6 combine, in a running gear, an arched axle, a tongue connected with the arched portion of the axle, "means" for preventing the arch from "spreading," and "means" (in claim 5) and rods (in claim 6) for rigidly connecting the end portions of the axle with the tongue.

It is frankly admitted that the arch of the axle is old and not original with Keene. The axle, consisting of a round steel bar, is so arched in its central portion as to comprise a horizontal top bar, diverging sides, and oppositely extending horizontal arms; the wheels being adjusted to the outer portions of such arms. It is not claimed that the axle wheels possess any patentable quality in themselves. The tongue called for would seem to be of the ordinary type, and, according to the specification, is "pivotally secured to the top bar" of the axle, through the use of clips embracing the bar and extending up-

wardly through suitable openings in a plate which is maintained above the bar and extended for some distance on top of the tongue; these clips are held in place by threaded ends to which nuts are adjusted on top of the plate. The tongue is further held in place by two rods disposed between points (in the chord below described and to which the rods are fastened) near the ends of the axle and common points forwardly on the sides of the tongue, where they are fastened. We must turn to the specification and drawings for the only definition given (at least in the letters patent) of the term "means," as it is used in these claims, for preventing the arched axle from spreading. The specification provides for two chord members (appearing in the drawings to be two similar pieces of straight timber) extending side by side upon the arms of the axle, across the arch, and having grooves in their meeting faces to receive the diverging sides of the arch; the chord members are secured together by bolts, and to the arms of the axle by clips surrounding the arms and extending upwardly through suitable openings in the chord members where the ends of the clips are adjusted to and held in place by nuts. It is to be observed that these claims do not call for the "two chord members," but use, instead, the broader clause "means for preventing the arch from spreading." They therefore reach a single chord or tie rod, such as defendant uses, and so are open to anticipation in this respect by a single chord or tie rod in the old art. The claims appear in the margin.[1]

Claim 7 introduces the fifth wheel before alluded to and is in terms associated in a running gear with an arched axle. The tongue, including the plate and the rods for connecting it with the axle, as also the chord members, are omitted. The fifth wheel comprises two plates, connected centrally by a kingbolt, and arranged to rotate one upon the other. The lower member is secured to the upper bar of the axle by depending arms which are bifurcated at their lower ends so as to receive the bar, and to hold it by the use of bolts passing through openings in the lower ends of the arms and beneath the bar. These arms and bolts afford the pivotal support and withdrawable means mentioned in the claim. The upper plate is provided with two bracket arms extending forwardly to support a portion of the vehicle body; and two posts rising from the upper member support the forward bolster of the vehicle. It is to be noted that the pivotal support before referred to is nowhere shown in the specification, and if such relation exists it has no apparent advantage and none is stated. Claim 7 is set out in the margin.[2]

[1] "5. In running gear, in combination, an arched axle; a tongue connected with the arched portion of said axle; means for preventing the sides of said arched portion from spreading; and means for rigidly connecting the end portions of said axle with said tongue.

"6. In running gear, in combination, an arched axle; a tongue; means for connecting the end of said tongue with the arched portion of said axle; means for preventing the sides of said arched portion from spreading; and rods rigidly connecting said tongue with the end portions of said axle member."

[2] "7. In running gear, in combination, a fifth wheel having two downwardly extending arms, bifurcated at their lower ends; an arched axle pivotally supported in the bifurcations of said arms; and withdrawable means for retaining said axle in said arms."

The parts in terms combined in claims 8 and 9 are substantially alike; but claim 8 calls simply for an axle while claim 9 calls for an arched axle; apart from this difference, both claims expressly provide for a fifth wheel and a tongue, with pivotal connection between each and the top bar of the axle, but they call only for "means" to connect the tongue with the ends of the axle. Claims 8 and 9 are shown in the margin.[3]

In testing the effect of the prior art upon the claims in suit, it will be helpful even again to recall the elements of the contested claims, without present reference to the merits of the combinations themselves. They are grouped in a running gear comprising: An arched and braced axle mounted on ordinary low wheels; a tongue connected directly with the top bar and indirectly through brace rods with the ends of the axle; and a fifth wheel, having withdrawable means, mounted on the top bar of the axle, with its upper and lower members connected by a kingbolt, the upper member bearing a forward bolster and having bracket arms extending forwardly to support a portion of the vehicle body. Although we have mentioned the forward bolster and bracket arms, they, as well as the end wheels of the axle, are each omitted from the claims. Keene in effect admitted his purpose of using an old form of arched axle, when he said, as already stated, that it is "adapted to vehicles having small forward wheels"; and his purpose of strengthening the arch is made equally plain by his specification, where it is stated that "the weight of the load placed upon this axle is carried upon the arch of the axle proper." The idea of bracing an arched axle, however, was old at the date of his application. It is also true that the tongue used and its connections with the axle were likewise old.

The patent to Lomont in 1889, No. 410,249, shows an arched and trussed front axle with wheels that would readily pass under the vehicle body when making short turns in either direction. The front axle is composed of an arched metallic bar; it is supported, moreover, by a metal bar chord and by metal bar braces supplementing the chord. The patent also shows a tongue, the rear end of which appears from the drawings, though not by the specification, to be connected with the trussed axle; but braces for the tongue are distinctly shown and described, which are disposed similarly to the rods of the present patent, and which connect the tongue with the end portions of the front axle. The patent to Morel and Lomont in 1890, No. 433,482, contains a trussed axle similar to Lomont's, and a tongue maintained as follows: its rear end is fastened to the upper bar of the axle by converging metal arms, and through the use of inclined bars the tongue

[3] "8. In running gear, in combination, a fifth wheel comprising an upper and a lower member rotatably secured together; an axle pivotally connected with the lower fifth-wheel member; a tongue connected at one end with said axle; and means for connecting the ends of said axle with said tongue."

"9. In running gear, in combination, a fifth wheel comprising an upper and a lower member rotatably secured together; an axle having an arched central portion, which central portion is pivotally connected with the lower member of said fifth wheel; a tongue connected at one end with said central portion; and means for connecting the ends of said axle with said tongue."

is also fastened to the end portions of the axle; in point of equivalency these features are the same as those of the patent in suit. It is true these patents relate to road scrapers, but they are large four-wheeled devices that would seem to require much strength and sustaining power in the front axles, as well as tongues rigidly maintained for drawing and turning the vehicles. The patent to Senderling in 1900, No. 653,-489, discloses an arched axle and means for preventing the sides of the arch from spreading; also a tongue which is so adjusted as in effect to be connected both with the arched portion of the axle, and, through the use of brace rods, with the end portions of the axle. The arched axle proper would seem to be of metal, though this is not distinctly stated; a large wooden member is fitted to and placed upon the upper surface of the member just mentioned; the two members are fastened together by substantial clips disposed similarly to those of the patent in suit except that their threaded ends and nuts are maintained at the bottom instead of the top of the braced structure. The strength of this construction is questioned by counsel; but the unitary character of the structure would seem substantially to utilize the combined strength of its parts.

There are other patents showing parts similar to those we have described. For example, patents to Custer in 1870, No. 107,688; to Vanorman in 1871, No. 121,692; to Bell in 1883, No. 278,855; to Jewett and Nichols in 1887, No. 363,241, and to Bulger in 1889, No. 397,777, disclose each a trussed arched axle; and further patents, to Moulton in 1886, No. 347,820; to Moulton and Booth in 1887, No. 370,347; and to Reed in 1890, No. 438,896, severally disclose arched axles and tongues with devices designed to fasten the tongues to the centers and, through lateral tie rods, to the ends of the axles.

The remaining elements to be considered with reference to the prior art are the fifth wheel, its pivotal connection with the arched axle, and the "withdrawable means for retaining said axle in said arms." It will be remembered that the fifth wheel is first mentioned in claim 7, and that this claim is the only one that calls for the "withdrawable means" stated, while the pivotal connection alluded to appears in claims 7, 8 and 9; but when Keene made his application these elements were also old. It is well to remark here that a number of the patents before alluded to, indeed all disclosing four wheels, show devices of one kind or another for turning the front running gear of each freely upon its vertical axis; in truth, it is common knowledge that these devices are called fifth wheels regardless of their forms.

The patent to Gorsuch in 1885, No. 330,781, relates exclusively to fifth wheels, and seems plainly to have anticipated Keene's fifth wheel. The device of Gorsuch in part consists of a "base ring," the lower member of the fifth wheel, mounted on a straight axle and clipped thereto by two sets of integral arms, each set having a tie plate upon the lower ends, and each tie plate being held against the under face of the axle by nuts. The "cap ring" is the upper member of the fifth wheel, and is so constructed with reference to the base ring as to equalize all the bearings. It is to be noted that, apart from the fact that the upper and lower members of this fifth wheel are designed to

rotate one upon the other, the depending arms and tie plates that are maintained about the axle are to all intents and purposes the same as the bifurcated arms and attachments of the lower member of the fifth wheel in suit. Further, the "withdrawable means" in question had been disclosed by the device of Gorsuch more than 18 years before the date of Keene's application. The patent to Bache in 1892, No. 488,060, discloses a fifth wheel comprising two plates, in the form of arcs, designed to rotate one upon the other, the lower one having two depending clips for securing the device to the axle of the vehicle, and, as Bache says in his specification, "in the ordinary manner." These clips are provided with nuts at their lower ends, and so furnish another illustration of the "withdrawable means" claimed by Keene. The patent to Crall in 1889, No. 600,305, shows two circular and rotatably connected members of a fifth wheel; the lower member is provided integrally with lugs which are designed to straddle the axle and hold it in place, the lugs having clamp plates which are secured by nuts to the lower side of the axle; and, besides the other features of obvious resemblance, it is to be noted that this is an additional instance of the withdrawable means of Keene.

As to pivotal connections between arched axles and fifth wheels, our attention has been called to the patents of Kemp, one in 1897, No. 584,877, and the other in 1901, No. 666,426, which were for improvements in manure spreaders. The front running gear of each includes a fifth wheel connecting an arched axle with the frame or upper portion of the vehicle. We speak of the axles as *arched,* for the reason that they are so shown by the drawings; though in the specification of the first patent a "bent front axle" is called for, while in the second a "front axle" is mentioned. Indeed, the lack of detailed descriptions in the specifications as respects alike the fifth wheels and front axles is suggestive of the idea that fifth wheels and front arched axles were then regarded as familiar objects, especially when compared with other specifically described features of the patented devices. However, when the identifying letters appearing in the specifications are read in connection with the drawings, the parts are easily recognized and, moreover, a marked similarity is readily seen between the fifth wheels and the axles of those patents and the corresponding parts of the patent in suit. The particular feature of the Kemp patents to which attention is here called is that the arched front axle of each is pivotally connected with the fifth wheel. The axles are apparently round metal bars, and are maintained in circular openings of arms which extend downwardly from the fifth wheels; thus the pivotal quality of each of those connections is shown quite as certainly as it is in Keene's patent; and this is not to speak again of the fact that Keene fails to show any advantage to be derived from such a connection. And this pivotal connection was also shown in the patent to Watkins in 1887, No. 374,134, for improvements in manure spreaders. The front axle there is arched and appears to consist of a round metal bar. A fifth wheel, plainly shown between the axle and front bolster, has broad depending arms which embrace the central portion of the axle and are held together by a bolt passing through openings near the lower ends of the arms.

[1] Apart from the undisputed testimony of the defendant's expert, the drawings alone must here be relied on; it hardly can be doubted, however, that they show the arched axle to be pivotally connected with and supported by the depending arms of the fifth wheel. Further, the bolt mentioned would seem to afford withdrawable means equally with that feature of Keene's patent; and we think it is clear that through these drawings the device mentioned was "described" in a "printed publication" within the meaning of the Patent Act. Section 4886, as amended by Act March 3, 1897, c. 391, 29 Stat. 602; Loom Co. v. Higgins, 105 U. S. 580, 594, 26 L. Ed. 1177; Saunders v. Allen, 60 Fed. 610, 613, 9. C. C. A. 157 (C. C. A. 2d Cir.).

[2-4] Now, in view of the prior art, can it rightfully be said that patentable novelty, rather than mechanical skill, is disclosed by any of the combinations set out in the claims in suit? The question of invention or skill is necessarily one of fact. Loose Leaf Co. v. Leaf Binder Co., 230 Fed. 120, —— C. C. A. ——, decided by this court December 15, 1915; Herman v. Youngstown Car Mfg. Co., 191 Fed. 579, 112 C. C. A. 185 (C. C. A. 6th Cir.); Ferro-Concrete Const. Co. v. Concrete Steel Co., 206 Fed. 666, 668, 124 C. C. A. 466 (C. C. A. 6th Cir.). Although the range of inquiry into the state of fact presented here is large, it is to be remarked that the plaintiff's expert distinctly admitted that he had not considered the prior art. The fact alone that the elements of a combination-claim are old is, of course, not enough to invalidate it. Loom Co. v. Higgins, supra, 105 U. S. 591, 26 L. Ed. 1177; Loose Leaf Co. v. Leaf Binder Co., supra; Ferro-Concrete Case, supra, 206 Fed. 668, 124 C. C. A. 466. Here, however, the elements of the claims in issue were not merely old at the date of Keene's application, but in point of equivalency they had for years been devoted to the same uses in the same art and with substantially like results. It would seem to follow that skill, rather than inventive faculty, was involved in producing the combinations in question. See decisions of this court in Overweight Counterbalance El. Co. v. Henry Vogt Mach. Co., 102 Fed. 957, 961, 962, 43 C. C. A. 80; American Carriage Co. v. Wyeth, 139 Fed. 389, 391, 392, 71 C. C. A. 485; Star Hame Mfg. Co. v. United States Hame Co., 227 Fed. 876, 882, 883, —— C. C. A. ——, and citations. As Judge Severens said in the first of these decisions:

"There is no invention in merely selecting and putting together the most desirable parts of different machines in the same art, where each operates in the same way in the new machine as it did in the old, and effects the same result. No principle of the patent law stands on plainer reasons than this."

[5] But it is said that defendant has failed to show any single patent or prior publication which contains all the elements of any of the contested claims, and that "the question of anticipation" cannot be determined upon a showing from the history of the art that one of the elements may be found here and another there and so on throughout the entire number. Clearly the facts of the present case do not admit of, much less require resort to such a course here; too many parts of the present structure are found, as we have seen, in a single

prior patent, not to speak of their repetition in each of *several* earlier patents. It is true, however, that the method suggested by counsel might not of itself justify condemning a patent; it is equally plain that the suggestion is not an answer to the question that must be met here; it overlooks the evidential tendency of the prior art in a given case either to establish or to negative the presence of invention. It scarcely need to be said that courts may and do look into the prior art for the purpose of ascertaining whether the elements of a claim are new or old and, if old, whether through the means of comparison so afforded the skill of the mechanic, or indeed the faculty of the inventor, was required to organize the elements of the claim and to adapt them so as to accomplish the result attained. It is not perceived, nor do counsel suggest, what better source of information, what means more calculated to lead the mind to a right conclusion, can be found than in the prior art. True, prior art becomes at times a source of confusion and even abuse. Still, to insist that claims disclose invention or discovery where their substantial equivalency in elements, in mode of operation and results, plainly appear in two or more earlier patents or publications, though not all in one patent or publication, is to ignore the very terms of the patent act. Above all, counsel's theory is opposed to the settled course of judicial decision. As was said, in holding a claim to be void for want of invention, in Dilg v. George Borgfeldt & Co., 189 Fed. 588, 590, 110 C. C. A. 568, 570 (C. C. A. 2d Cir.):

" * * * Although all the elements of the claim may not be found in any one patent, it is clear that they are all to be found in different patents. No single patent may anticipate, but they all have a bearing upon the question whether invention or mechanical skill was involved or required."

Again, in Duer v. Corbin Cabinet Lock Co., 149 U. S. 216, at 222, 13 Sup. Ct. 850, at 853 (37 L. Ed. 707), when affirming a decree dismissing the bill in a patent suit, Mr. Justice Brown said:

"In view of the advance that had been made by prior inventors, it is difficult to see wherein Orum displayed anything more than the usual skill of a mechanic in the execution of his device. All that he claims as invention is found in one or more of the prior patents."

And further (149 U. S. 223, 13 Sup. Ct. 853, [37 L. Ed. 707]):

"In view of the fact that Mr. Orum had no actual knowledge of the Gory patent, he may rightfully claim the quality of invention in the conception of his own device, but as he is deemed in a legal point of view to have had this and all other prior patents before him, his title to invention rests upon modifications of these, too trivial to be the subject of serious consideration."

So in Florsheim v. Schilling, 137 U. S. 64, 11 Sup. Ct. 20, 34 L. Ed. 574, where alleged infringements of two separate patents were involved, and error was assigned to a finding of the circuit court that "there was no novelty in complainants' invention, because one feature was found in one old patent, and another feature in another, and still another feature in a third patent, all of which constituted the subject-matter of the claims in complainants' patent," it was held (137 U. S. 72, 11 Sup. Ct. 23 [34 L. Ed. 574]):

"We concur with the Circuit Court that all the claims in these patents, except the last two claims in No. 238,101, are invalid by reason of their long prior use as inventions secured by patents which cover every feature described in those claims; and that the combination of these features in No. 238,100 is not a patentable invention."

And in Busell Trimmer Co. v. Stevens, 137 U. S. 423, 11 Sup. Ct. 150, 34 L. Ed. 719, when denying the contention that certain features in the Orcutt patent constituted "patentable novelties, especially the combination of them into one device," it was said (137 U. S. 433, 11 Sup. Ct. 153 [34 L. Ed. 719]):

"We repeat that in view of the previous state of the art we think otherwise. The evidence, taken as a whole, shows that all of those claimed elements are to be found in various prior patents—some in one patent, and some in another, but all performing like functions in well-known inventions having the same object as the Orcutt patent, and that there is no substantial difference between the Brown metal cutter and Orcutt's cutter, except in the configuration of their molded surfaces. That difference, to our minds, is not a patentable difference, even though the one cutter was used in the metal art, and the other in the leather art. A combination of old elements, such as are found in the patented device in suit, does not constitute a patentable invention."

See, also, decisions of this court before cited: Overweight Counterbalance El. Co. v. Henry Vogt Mach. Co., 102 Fed. at page 961, 43 C. C. A. 80; American Carriage Co. v. Wyeth, 139 Fed. at page 391, 71 C. C. A. 485.

[6, 7] We may add that when all the parts of the claims involved in the instant suit are considered, either separately or collectively, it cannot escape attention that there is substantial identity both in function and result between these parts and those of other structures, which, it is safe to say, had been well known for many years. We cannot doubt that it was well within the skill of the mechanic, when once told of defects existing in any of the old parts so intended to be used, to devise and make the changes appearing here. If it were conceded that Keene's arrangement is attended with better results than had been obtained before, still this would not sustain the contested claims, for "the mere carrying forward of an original conception, resulting in an improvement, in degree simply, is not invention" Consolidated Roller Mill Co. v. Walker, 138 U. S. 124, 132, 11 Sup. Ct. 292, 34 L. Ed. 920; Burt v. Evory, 133 U. S. 349, 359, 10 Sup. Ct. 394, 33 L. Ed. 647; Star Hame Mfg. Co. v. United States Hame Co., supra, 227 Fed. at page 883, —— C. C. A. ——, and citations; Dilg v. George Borgfeldt & Co., supra, 189 Fed. at page 591, 110 C. C. A. 568; Overweight Counterbalance El. Co. v. Henry Vogt Mach. Co., supra, 102 Fed. at page 961, 43 C. C. A. 80; American Carriage Co. v. Wyeth, supra, 139 Fed. at page 391, 71 C. C. A. 485.

[8] It is shown that large sales have been made of the manure spreaders upon which the patented structure in question has been used, and it is insisted that this fact, in connection with the presumption arising from the issue of the letters patent, ought to sustain the patent. True, in cases of doubtful validity, commercial success of the patented device is often helpful; but such a fact cannot aid patented claims which are, as here, clearly lacking in the necessary quality of

invention. Olin v. Timken, 155 U. S. 141, 155, 15 Sup. Ct. 49, 39 L. Ed. 100; Richards v. Chase Elevator Co., 159 U. S. 477, 487, 16 Sup. Ct. 53, 40 L. Ed. 225; Lane v. Welds, 99 Fed. 286, 292, 39 C. C. A. 528 (C. C. A. 6th Cir.); Autosales Gum & Chocolate Co. v. Caille Bros. Co., 224 Fed. 473, 476, 140 C. C. A. 159 (C. C. A. 6th Cir.).

The decree dismissing the bill is affirmed, with costs.