## EDWARDS v. DAYTON MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. December 5, 1918.)

### No. 3044.

1. PATENTS ☞26(2)—INVENTION—COMBINATION—NEW RESULTS.

Invention may exist, even though every element is old, provided the combination either produces a new result or effects an old result in a new and materially better way.

2. PATENTS ☞26(1)—LACK OF INVENTION—ELEMENTS OF PRIOR ART.

All elements of the prior art have a bearing on the question of invention, and it is unnecessary to a finding of lack of invention that every element be found in one embodiment.

3. PATENTS ☞328—LACK OF INVENTION—COMBINATION OF ELEMENTS IN PRIOR ART.

The Edwards patent, No. 890,626, for an improvement in window holding and fastening devices, *held* void for lack of invention, consisting merely in a combination of the desirable elements of different devices in the same art.

Appeal from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Suit for infringement of patents by Oliver M. Edwards against the Dayton Manufacturing Company. From a decree for defendant, plaintiff appeals. Affirmed.

Arthur E. Parsons, of Syracuse, N. Y., for appellant.

H. A. Toulmin, of Dayton, Ohio, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. Suit for infringement of United States patent No. 890,626 to Edwards, June 16, 1908, for improvement in window holding and fastening devices. The District Court held the patent void for anticipation.

The device of the patent is sufficiently shown by Figs. 1, 2, and 3

of the patent drawings here reproduced, in which *A* is the window frame, *B* the sash adapted to move up and down in guides *a* in the frame, which is provided with stops *b*. The two lower fastening devices, *D* and *D'*, have each a wedge-headed bolt *d*, actuated by a spring *s*, which normally pushes the bolt outwardly into contact with a bevel-faced attachment to the frame stop *b*, whereby the sash is normally pressed toward the exterior of the window. The upper fastenings, *D2* and *D3*, consist each of a flat, bent spring, having one end fastened to the frame stop *b*, the free end bearing against the inside of the sash, and so tending to force the latter

toward the exterior of the window. The exterior pressure of the four devices naturally tightens the window sash in its frame, so tending to prevent rattling and to exclude dust and cold.

The lower fastenings, D and D', are provided each with a finger-actuated lever, by which the wedge-headed bolt d may be withdrawn from contact with the bevel-faced stop attachment b; the window thus being readily raised by lifting through the finger pieces alone or by the contributing action of the counterbalance Z and its belt Z', which, however, are no necessary part of the invention. The beveled attachment to the frame stop is itself provided with a plurality of stops, enabling the holding of the window at different heights. The release of the bolts d through the use of the finger levers enables the lowering of the sash by gravity, except as limited by the frictional action of the leaf springs, D2 and D3. The specification shows various modifications of the devices represented by the figures we have reproduced, but they involve nothing calling for special mention.

The claims in suit are Nos. 1, 15, 21, 22, 23, 24 and 26. We copy in the margin the twenty-sixth claim, which is the broadest and the fifteenth claim which is the most specific.[1]

The claimed invention, to say the least, rests upon a very narrow foundation. There was nothing novel in either the upper or lower fastening devices themselves, nor in their mere adoption for the purposes to which the patent applied them, viz. to support the sash at any desired elevation so tightly as to prevent rattling and to exclude dust and drafts of air, and at the same time permit the ready release of the holding attachment sufficiently for the opening and closing movement. Indeed, plaintiff's counsel frankly concedes that there would be no invention in adopting either the two lower holding devices alone or the two upper holding devices by themselves.

It is contended, however, that there is invention in the use of the four holding devices shown, whereby the four points of pressure contribute together to force the sash outwardly, thus preventing rattling and the entrance of dust and air—in connection with the means for raising the window.

Counsel more explicitly limits the claim of invention (by adoption of the description of plaintiff's expert) to—

---

[1] "26. In a window the combination, substantially as set forth, of a guide-way, a sash adapted to move therein, and a series of spring actuated individual holding devices, a portion of which series is provided with means to partially release the sash and another portion of such series is unprovided with such means and is adapted to bear against the sash in its movement to open and close the window and partially hold it in its guideway."

"15. In a window the combination, substantially as set forth, of a guide-way, a sash adapted to move in the guideway, individual holding devices adapted to bear against the sash at different points, a portion of which bear with substantially equal force in either direction of movement of the sash, one point of bearing for each device, a plurality of which devices are provided with movable parts yieldingly bearing against the sash, each of which is actuable, actuating means for such parts, and coacting portions for the holding devices, a portion being arranged substantially in the direction the sash moves with which the bearing surfaces of the holding devices may frictionally bear and hold the sash in the guideway."

"a plurality of sash-holding devices independent of each other, and each pressing the sash outwardly against a given point of the outer stop of the guideway, a portion of these devices—those at the lower left-hand and right-hand sides of the sash—being releasable and having means whereby they are released in the movement for raising the sash to open the windows, and whereby movement is given to the sash. The remainder of these devices, those at the upper corners of the cash, being non-releasable, whereby the sash is more or less supported and controlled in its opening and closing movements."

This is apparently intended to include a combination of the two non-releasable devices above, and at least one below.

Reference to the prior art shows that each element of the device of the patent was old in the window sash holding art, long before the Edwards patent was applied for. In 1880 (antedating Edwards by 23 years), Brittain,᛫ by British patent No. 3531, disclosed a ᛫car or door window, opened by lowering and vertically shiftable by means of a strap attached to a lever on the lower edge of the window, whose sash, for the purpose of preventing rattling of the window, carried at each of its two upper corners wedge-headed bolts, actuated by coil springs, normally pushing the bolt heads against a bevel-faced stile in the door frame. The sash also carries near each of its two lower corners non-releasable, rearwardly pressing leaf springs. The patent also describes a construction of the wedge-headed bolts whereby, through the use of sufficiently strong coil springs, the sash can be held in any position to which it may be brought, and the bolts released through handles on the inner ends of their stems. It is clear that the engagement of the bolt-heads of the upper fastenings with the bevel-faced stiles causes a wedging action, and thereby a tendency to force the bolt heads themselves and thus indirectly the window, rearwardly and at right angles to its plane. The specification does not in terms state, and the drawings (which are not shown to be made to scale) do not all show, the window sash when closed as actually overlapping the rectangular frame stiles, and unless that were so, the device would not appreciably exclude dust and' air, and the leaf springs would not exert pressure when the window is closed, or nearly so.

One of the drawings, however, indicates an actual overlapping of the sash, and the natural inference would be, from the specification and drawings taken together, that such overlapping was intended, and that the leaf springs were intended to be operative when the window is entirely closed as well as when open or partly open. But, were the Brittain patent to be rejected as an anticipation, for lack of clearness in the respects mentioned, it is still an important reference, as disclosing, in the same art, a structure evidently designed by the inventor for four point corner pressure, to be accomplished by devices of the same type as those of the patent in suit; and no one would claim that it would be invention merely to reverse Brittain's arrangement of holding devices by putting his releasable wedge-shaped bolts below and his nonreleasable leaf springs above, to meet the problem of a window opened by raising instead of by lowering. The existence of a four point rearward pressure when the window is partly open has at least an important bearing on the question of invention in employing such pressure at all times.

Kane, however, in 1892, by United States patent No. 473,757, had disclosed an invention for keeping the window tight (when either closed or open) and preventing it from rattling, and at the same time permitting ready release of the sash, when desirable to raise or lower it, by the use of attachments, one on the inner face of each of the four corners of the sash, whereby a beveled bar is pressed against a beveled guideway in the frame, thereby through a wedging action forcing the sash against the outer stops. The release of the two lower fastenings automatically released the upper fastenings also. Here we have the direct exterior pressure of the sash itself against its outer stops, with the natural effect of excluding dust and drafts of air, as well as preventing rattling.

Again, Waddington, in 1893, by British patent No. 15,003, showed a device for the stated purpose of holding either sash of a window (including railway carriage windows) in desired position (partly raised or partly lowered), consisting of leaf springs, one at each corner of the sash; one end of the spring being attached to the sash-face, the free end (with or without antifriction roller thereon) bearing against the window frame and pressing the sash, in a direction at right angles with the face of the window, into close engagement with the frame. While the specification does not expressly state against which stop the sash is pressed, the drawings seem to indicate pressure against the outer stop. The natural and direct effect of the Waddington device was to prevent rattling and to exclude dust and air.

Still further, Howe, in 1891 (United States patent No. 448,882), showed a device for supporting a sash (including that of a car window) at any desired elevation, and so tightening it in the frame as to make it "firm and to exclude dust," and at the same time permit its ready release, by the use of a single finger-operated bevel-headed plunger, forced by coil springs against the beveled face of a vertical rack bar with stops thereon, so as, by a wedging action, "to force the sash outwardly against the rabbet of the window frame and thereby render the sash tight against such rabbet." If it excluded dust, it would, of course, exclude drafts of air.

[1, 2] Other more or less pertinent references to the prior art might be made; but those cited, even disregarding Brittain (who, plaintiff's expert says, discloses "the closest approach to the structure and organization found in the patent in suit"), are sufficient to show that, while no one reference contains all elements of the claims in suit, yet every element, according to plaintiff's counsel's interpretation of them already given, is specifically disclosed in substantially the same relation and for substantially the same purpose for which they are employed in the patent before us. While invention may exist, even though every element is old, provided the combination either produces a new result or effects an old result in a new and materially better way (Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; Ferro Concrete Constr. Co. v. Concrete Steel Co. [C. C. A. 6] 206 Fed. 666, 669, 124 C. C. A. 466), yet all elements of the prior art have a bearing upon the question of invention, and it is unnecessary to a finding of lack of invention that

every element be found in one embodiment (Keene v. New Idea Spreader Co. [C. C. A. 6] 231 Fed. 701, 708, 145 C. C. A. 507).

[3] Upon careful consideration of the prior art, and giving due weight to the well-established utility of plaintiff's device and its highly favorable commercial reception, we are unable to find in it room for invention. The most which, to our minds, can be said is that the inventor has, in the exercise of a high degree of mechanical skill, selected and put together the most desirable parts of different devices in the same art, making a new structure, doubtless better than any which preceded it, but in which each part operates in substantially the same way as it did in the old and effects substantially the same result. This is not invention. Overweight Counter-Balance Co. v. Vogt Mach. Co. (C. C. A. 6) 102 Fed. 957, 43 C. C. A. 80; Railroad Supply Co. v. Elyria Iron Co., 244 U. S 285, 37 Sup. Ct. 502, 61 L. Ed. 1136; Huebner-Toledo Breweries Co. v. Matthews Gravity Carrier Co., 253 Fed. 435, —— C. C. A. —— (decided by this court October 8, 1918).

The decree of the District Court is accordingly affirmed.