**PEARCY et al. v. COE, Commissioner of Patents.**

No. 5806.

Court of Appeals of the District of Columbia.

Argued Oct. 5, 1933.

Decided Dec. 11, 1933.

F. W. Lyle, of East Pittsburg, Pa., and Raymond Jones, of Washington, D. C., for appellants.

T. A. Hostetler, Solicitor, United States Patent Office, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from a decree of the Supreme Court of the District of Columbia in an equity suit, brought under section 4915, R. S. (35 USCA § 63), against the Commissioner of Patents, wherein appellants were denied letters patent for an alleged invention of an electric space-current device.

The application for the patent contained seven claims, of which the fourth has been withdrawn. All of the claims were denied by the Commissioner of Patents, whereupon the present suit in equity was begun in the lower court, and this appeal is prosecuted under the statute.

The invention described in the application is an electrical space-current device, for use in a rectifier, or for similar purpose, comprising a partially evacuated glass envelope, and a pair of discharge electrodes including a cold anode and a hot (thermionically emissive) cathode. It is stated that the cathode structure of the device is the principal feature of the invention, and claims 1, 2, and 3 relate to it. Claims 5, 6, and 7 define an electrical-discharge tube inclosing a gaseous atmosphere, including also the thermionic cathode defined in claims 1, 2, and 3.

Claim 2, which is illustrative of the first three claims, reads as follows: "2. A thermionic electrode comprising a heating element including a substantially cylindrical member of refractory material, and a thermionically active sleeve in contact with said cylindrical member, said sleeve comprising a sintered mixture of nickel particles and particles of oxides of the alkaline earth metals."

Claim 6, which is illustrative of the last three claims, reads as follows: "6. An electrical discharge tube enclosing a gaseous at-

mosphere of such a pressure that gas ions carry a substantial part of the current, and comprising an anode and a thermionic cathode comprising a heating element and a refractory insulating member in good thermal relation therewith, said insulating member having a coating comprising a sintered mixture of metal particles and thermionically active particles."

The cathode structure set out in claims 1, 2, and 3 comprises a heating element consisting of a cylindrical member of refractory material through which a **U**-shaped heating filament extends. Surrounding the cylindrical member and adhering to it is a sleeve which is composed of a sintered mass of metal and oxides of the alkaline earth metals and constitutes the electron-emitting element of the cathode. The oxides of barium, strontium, and calcium are used as the electron-emitting oxides, and these are fused or sintered with finely divided nickel particles to form a homogeneous mass which is firmly held to the nickel. It is claimed by the applicant that these capably withstand the positive-ion bombardment and maintain substantially constant performance throughout the life of the rectifier.

The applicant states that by means of his invention he provides a gas-filled rectifier having a cathode which is either directly or indirectly heated and employs as an electron-emitting element a fused or sintered mass of nickel and thermionic emitting oxides such as barium, strontium, and calcium oxides, and that thereby he obtains an electron-emitting element which has very high emissivity, and maintains about the same characteristics for a very long time, far exceeding the life and performance of the ordinary tungsten electrodes. The envelope is preferably to be filled with a small quantity of inert gas such as argon or mercury vapor for securing an atmosphere of molecules capable of carrying a discharge between the cathode and anode at a relatively low pressure, as is well known in the art. In making the sleeve which constitutes the electron-emitting element of the cathode, nickel is preferably used on account of its relatively low melting point.

The subject-matter of the rejected claims was, however, held by the Board of Appeals and by the court below to be unpatentable in view of the prior art as represented by the following patents: Nicolson, 1169182, January 25, 1916; Torrisi, 1368584, February 15, 1921; Hocker, 1459400, June 19, 1923; Marden, 1591717, July 6, 1926; Fessenden, 915280, March 16, 1909.

The Nicolson patent relates to a thermionic translating device. It discloses a cathode for use in an electron-emitting device which consists of a heating element threaded through a quartz tube, the outer surface of which has a thermionic active coating. The coating is prepared by first forming a platinum deposit on the quartz tube; the platinum deposit being in turn coated with a thermionically active material as a mixture of the oxides of barium and strontium.

The patent to Torrisi is for a cathode for audions. It discloses a cathode comprising a cylindrical nickel tube, which is platinum plated both inside and out and covered on the outside walls with an electron-emissive oxide. The heating element for the cathode element consists of a rod of a heat-resisting composition, as porcelain, wound on its tip with a heating coil with leads running down the rod. The heater element is inserted into the cathode element, and is renewable from the outside of the discharge device.

The patent to Hocker is for an electron-emitting cathode and process of making the same. It discloses a cathode for use in an electron-discharge device which consists of a filamentary core of platinum or a suitable platinum alloy with a coating of alkaline earth oxides either singly or in combination impregnated with a finely divided noble metal as platinum, gold, or silver. The electron-emitting material is applied to the core material by dipping the core into a solution of the oxides and a chloride of the noble metal which is easily converted to the metal upon being heated, and then baking the coating upon the core material.

The patent to Marden is for an electron-emitting material and method of manufacture. It discloses a cathode for use in an electron-discharge device which may consist of a core material as tantalum or platinum-iridium with an electron-emissive coating of oxides of barium and strontium intimately mixed with finely divided metal as platinum or nickel, or else the filament may be made entirely of electron-emissive oxides intimately mixed with a finely divided metal as platinum or nickel. The cathode may be formed by applying a suspension of the mixture of the oxides and the finely divided metal to the filamentary core material by any suitable method, as dipping or spraying and then baking the coating of the filamentary core. Water or nitro-cellulose dissolved in anyl-acetate may be used as the suspending medium. If the cathode is to be made entirely of the alkaline earth oxides, intimately mixed with the finely

divided metal (nickel), a paste of the oxides and the metal powder with any suitable binder may be squirted into a filament in the manner similar to that in which squirted tungsten filaments were formerly made; that is, the squirted filament could be heated to drive out the binding medium and thereafter raised to a high temperature in an inert atmosphere to cause the particles to sinter. Instead of squirting the filaments, the alkaline earth oxides intimately mixed with the finely divided metal powders may be pressed into a slug and treated in accordance with the method now commonly utilized for treating tungsten and molybdenum; that is, the slug could be heated in an inert atmosphere to cause the slug to be sintered and thereafter swaged or rolled to filamentary proportions.

The patent to Fessenden is for an electrical signaling device. It uses a vacuum tube, which may be of any desired shape, and may contain any suitable gas such as hydrogen, nitrogen, helium, argon, neon, etc., the ones named of the helium group having been found especially advantageous. The cathode is of such material as iridium or aluminum, possibly covered with an oxide of calcium or its equivalents, barium or strontium. This cathode is indirectly heated, and the structure clearly discloses the broad combination of an electric discharge tube filled with an ionizable gas and housing electrodes, one of which is an indirectly heated oxide-coated cathode.

Upon a review of the record, we are convinced that the claims now in question were anticipated by the inventions set out in the foregoing references.

The patents mentioned therein show that the use of nickel, barium oxide, strontium oxide, and calcium oxide has long been known in the art for uses similar to those made of them in the present construction. This appears from the patents of Marden and Hocker. In Nicolson's patent is found a thermionic electrode comprising a heating element including a member of nonconducting refractory material. The coating, however, differs from the present claims in that the metal and oxides are separately applied and not mixed. Marden, however, discloses that the metal and oxides may be applied to the filament when sintered or may be baked thereon. The equivalent to the sleeve in the present application is to be found in the coating.

We agree with the statement of the Examiner which was subsequently approved by the Board of Appeals that no invention is involved in substituting or perceiving the possibility of substituting the coating of Mar-

den's and Hocker's in place of the coating of Nicolson's cathode and this conclusion meets appellants' claims 1, 2, and 3.

In respect to claims 5, 6, and 7, which include the vacuum tube, inclosing a gaseous atmosphere in combination with the cathode construction set out in claims 1, 2, and 3, it appears that Nicolson, Torrisi, and Hocker severally disclose a vacuum tube, and the Marden device also is intended to be used in a vacuum tube. A gaseous atmosphere within the tube is disclosed by Nicolson, Hocker, and Fessenden. The remaining elements contained in the glass tube are simply those defined by claims 1, 2, and 3, already mentioned above.

We therefore think that the claims are for a combination of elements producing no new result over what is shown in the art, and are therefore unpatentable. Edwards v. Dayton Mfg. Co. (C. C. A.) 257 F. 980.

The decree of the lower court, accordingly, is affirmed.