## DALLAS MACHINE & LOCOMOTIVE WORKS, Inc., v. WILLAMETTE-HYSTER CO. et al.

### No. 9581.

District Court, D. Oregon.

Feb. 6, 1939.

Theodore J. Geisler, of Portland, Or., for plaintiff.

Austin F. Flegel, Jr., of Portland, Or., and Charles M. Fryer, of San Francisco, Cal., for defendants.

JAMES ALGER FEE, District Judge.

Plaintiff is the assignee of United States Letters Patent No. 1,457,025, issued May 29, 1923, to Carl Gerlinger, and relating to lumber carriers. This is a suit, for in-

fringement thereof by the defendants, limited by bill of particulars to Claim 4 of the patent, which reads:

"Claim 4 is as follows:

"A Lumber Carrier, comprising

"1. A frame;

"2. Load-lifting means mounted *there-in:*

"3. Means for transmitting motion from a source of power to the load-lifting means, comprising a clutch that can be set in neutral position or to cause the load-lifting means to move in either direction;

"4. Means for manually moving the clutch to operative position;

"5. Automatic means for moving the clutch to neutral position upon the movement of the load-lifting means to a predetermined extent in *either* direction;

"6. Means for braking the transmitting means whenever the clutch is moved to a neutral position."

The relief sought consists of (1) declaration of validity of the claim of the letters patent; (2) injunction against infringement and (3) accounting. The principle defenses are (1) lack of infringement in view of the prior art; (2) that the patentee was not the "first, sole, or any inventor or discoverer of the alleged invention", but that it had been publicly used and sold more than two years prior to the application for patent and its principles are shown in several cited patents prior to that time; (3) that the principles were shown more than two years before that application by the Ross Carrier; (4) that by reason of the rejection of broad claims by the Patent Office and acquiescence therein by claimant Gerlinger was limited to the precise details set up in the specifications; (5) that the Gerlinger device is without utility; (6) that plaintiff was guilty of laches.

The analysis of this patent in the Master's Report is as follows:

"It may serve, in properly analyzing this patent, to state what was the previous state of the art and what the patentee claims to have invented. The machine shown in the patent is a self-propelled carrier, containing a lifting device, which picks up a load *within* and not *upon* or in *front* of its frame, and enabling the load to be picked up, transported and deposited as desired. None of these things were new in the art when the patentee applied for his patent.

"These carriers, used originally and principally for the purpose of picking up and transporting piles of lumber, in the earlier stages of development utilized a cable or chain lift. Defects were discovered, in that the cable did not give a positive and uniform lift. The next method of lifting means adopted was rackbars and pinions driven from the power plant of the machine. Gerlinger claims to have been the originator of this kind of a hoist as adapted to a straddle type lumber carrier. In use it was found that, while the lift was positive and uniform, considerable care was required on the part of the operator manually to disconnect the power from the lifting mechanism when the load had reached the proper height, and that in the course of travel vibration of the machine and other factors tended to cause the mechanism to settle to such an extent that sufficient clearance did not exist between the bottom of the load and the ground.

"The problem to which the patentee claims to have addressed himself was the development of means whereby, when the load was lifted, the hoisting mechanism would be stopped automatically at the desired point, the power disconnected therefrom, and the brake applied so as to prevent the settling of the load, and, further, that when the hoisting machine was reversed for the purpose of picking up a load the action would be automatically stopped at a desired point, the power again disconnected and the brake applied; all this without action on the part of the operator.

"This Gerlinger accomplished. The means disclosed by his patent and his drawings are as follows:

"1. To limit upward movement and procure automatic means for moving the clutch to neutral (thus disconnecting the source of power from the hoisting mechanism) and simultaneously applying the brake, he proposed a bar (No. 67, figure 3 of the patent drawing) moving on a pivot which would be engaged by the top of the load as it was hoisted, with suitable linkage which pushed the clutch into neutral and applied the brake. This linkage and this brake are Nos. 48, 69, 74 and 76 of the patent drawing.

"2. On downward movement of the hoist, to procure like automatic disconnection of the clutch and application of the brake, he proposed an adjustable set screw

(No. 65) attached to the upper end of the right hand rear rackbar, which, as the load was lowered, engaged one arm of a ball crank lever, (No. 66), the other end of which lever engaged the rear end of clutch lever No. 64 and in the movement threw the clutch into neutral and simultaneously actuated linkage, 74, which in turn, by means of a cam at its outer end, raised a brake, 76, engaging the shaft, 46, which drives the gears of the lifting mechanism."

The Master found that the principles illustrated in the Gerlinger patent had been previously exemplified in the patents to which reference is made in another portion of his report:

"The Dingee patent 414380 (Exhibit 59) issued November 5, 1889, clearly disclosed such a device. It relates to a stationary elevator or hoist. It discloses a clutch manually operated, by which power is transmitted to the hoisting mechanism and when power is thus applied, upward or downward movement is communicated to the load lifting means; when the load reaches a predetermined position, a projection on the lift engages a stop on a cable by which the clutch is manually operated, throws it into neutral and simultaneously applies the brake. (See Exhibit 60.)

"The Nicholson patent 134045 (Exhibit 62) issued May 18, 1920, covers a movable freight stacking elevator, which may be self-propelled. It is a front-end hoist, thus differing from the type of carrier shown by Gerlinger's drawings and specifications. However, it is a carrier with a frame, has load lifting means mounted therein, means of transmitting motion from a source of power to the lifting means, and a clutch that can be operated manually, set in neutral or so as to cause the load lifting means to move in either direction; it has automatic means for moving the clutch to neutral upon movement of the load lifting means to a pre-determined extent in either direction and means for simultaneously applying a brake whenever the clutch is in neutral. The only material difference in structure between that shown in plaintiff's patent and the Nicholson machine is that the frame containing the load lifting means is at the front end of the carrier and the load is carried at the front end instead of between the wheels.

"The French and Pavey patent, No. 1360917, (Exhibit 64), issued November 30, 1920, covers a device consisting of a hoist mounted on a truck.

"Lumber or any other portable commodity, within the capacity limits of the truck, can be picked up, hoisted, transported to another place and deposited. It is a *front-end* truck and in that respect differs from the structure disclosed by plaintiff's patent to the same extent as does Nicholson's. The stop which actuates the clutch and throws it into neutral and causes a brake to be applied consists of a nut on a threaded main shaft which engages lugs or collars which, by appropriate connection, throws the clutch into neutral and applies the brake. The operation is similar to that adopted by the defendant. (See Exhibit 65.)

"The patent to Towson et al., 1,337,804, (Ex. 66), issued April 20, 1920, is a self-propelled industrial truck, carrying a load in the front end, having a hoist with limited movement, disclosing automatic means for disconnecting power from the hoisting mechanism and simultaneously applying a brake. It does not disclose a clutch inasmuch as it is an electrically operated machine. The automatic stop merely breaks an electrical contact and thereby disconnects power (Exhibit 67.)

"The Carr patent (Exhibit 69), No. 1407124, issued February 21, 1922, is a self-propelled electrically operated elevator truck with a front-end lift. It contains no clutch but by making and breaking the electrical contact, connects or disconnects the source of power. It has an automatic brake and by virtue of certain stops, the power is disconnected and the brake automatically applied both at predetermined upper and lower limits of travel."

The Master found, therefore, that the machine set out in Gerlinger's specifications is an aggregation of devices old in the art. He further found that while a combination containing a stopping mechanism actuated by a load was patentable in view of the prior art, a mechanism limiting the travel of the lift at certain set points either upward or downward would not be, and that Gerlinger showed nothing in the patent which would entitle him to a monopoly except a combination including the load stop. Laches of plaintiff was found by the Master to constitute an independent bar to the suit. The cause comes here upon exceptions to these findings.

██ The field in which the Gerlinger patent was developed is divided into two

210

parts. First, there are the designs relating to elevators and, second, the art relating to self-propelled vehicles. In the Patent Office these two fields are separated for the purpose of detailed examinations, and this seems to have clouded the thinking upon the subject when trucks and elevators were united in one frame. Plaintiff claims that lumber carriers, consisting of lifting means mounted within a straddle carrier, constitute a separate field governed by peculiar principles and that the developments in the art of elevator or front-end carrier construction are not to be considered. Where a useful principle has been exemplified and belongs to the public domain, no monopoly can thereafter be granted as to that principle.[1] A toy may anticipate a useful industrial device. Where a machine has been invented which works in one material no monopoly can be granted simply because it has been set to work on some different material.[2]

■ The validity of the Gerlinger patent should be first then considered in relation to the construction of elevators, because the essential elements of the claim in question relate to the operation of a lifting device. Every element in this device was old in that art except the member 67, which stopped the operation of the elevator by the upward pressure of the load. Differentiation between the Gerlinger combination and any prior machine for lifting may be thus established. The prior art, as the Master found, bodied forth many devices for raising loads which contained members limiting the travel to specified points by cutting off the power and applying brakes to the mechanism. It disclosed no elevator designed to stop when the load carried thereby pressed against a designated member. Assuming utility, the mechanism was patentable, as an improvement upon the previous devices for load lifting.

The downward movement in the Gerlinger machine was stopped by an entirely different member, acting upon different principles, and not actuated by the load. By the application of purely mechanical skill, the stop on the downward movement could have been constructed, by following the designs of prior patents. This feature was therefore unpatentable alone in a lifting device. Under the specifications, Gerlinger could, as he actually did in practice, have substituted the type of stop on the downward movement for the load actuated stop of the upper movement. However, once this change was made on an elevator, the device would be unpatentable in view of the prior art.

The Gerlinger device does contain a four point independent lift, positively actuated. No differentiation can be seen between this type of lift and a platform lift in elevator construction and that art contains many exemplifications of the platform lift positively actuated. The brake upon the mechanism is also old in the art of construction of load lifting devices. These additions therefore would not render a load lifting device patentable, alone.

There must of course be conceded to a claim of a patent which has been granted, the presumption of validity. In a combination patent, where an element of novelty and supposed utility has been added to one of the constituent devices, the combination might be patentable. Here, although the device of limiting the upward movement by action of the load positively forced upward against a bar which actuated mechanism to cut off the power and apply a brake was one relating to the art of constructing elevators, it also constituted a patentable novelty in the peculiar combination of elevator and truck known as a straddle lumber carrier if utility were established. So construed the claim is valid. Upon similar principles, if the vital member which brought the mechanism to a stop were omitted the combination would not lay basis for a patent upon an elevator so designed nor would it infringe upon a machine which did contain the load stop.[3] To avoid this, the contention that an elevating device mounted within a straddle carrier constitutes a distinct art, is raised. But elevators and straddle carriers were both old and well known mechanisms before the Gerlinger patents. The latter should therefore be judged as an attempted combination of such mechanisms.

[1] See E. I. Du Pont De Nemours & Co. v. Glidden Co., D.C., 1 F.Supp. 1007, 1111; Howe Machine Company v. National Needle Company, 134 U.S. 388, 397, 10 S.Ct. 570, 33 L.Ed. 963; St. Germain v. Brunswick, 135 U.S. 227, 230, 10 S.Ct. 822, 34 L.Ed. 122.

[2] Ransome Concrete Machinery Co. v. United Concrete Machinery Co., 2 Cir., 177 F. 413.

[3] Cimiotti Unhairing Company v. American Fur Refining Company, 198 U.S. 399, 410, 25 S.Ct. 697, 49 L.Ed. 1100.

All in all, an elevator is a lifting device and a truck is a carrying mechanism. The function of these mechanisms is independent and diverse. While the form of the truck must be modified to accomodate the elevator and the form of the elevator must be changed to ride upon the truck, the essential function of each respective device remains. The union upon one frame is mechanical. The gearing of the respective devices to one power shaft is convenient but functionally incidental. When these devices were thus conveniently mounted together, the truck performed no new function. It carried the load and moved backward and forward. The elevator performed no new function. It lifted or lowered the load. Although geared to the same power shaft, these diverse devices did not even act simultaneously. The peculiar qualities of a truck and an elevator were not amalgamated to produce a new or different function or result.[4] A mere aggregation was attained.[5]

This is a clear case for the application of the principle of Grinnell Washing Machine Company v. E. E. Johnson Company, 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196, where it was held that a gearing device applied to a washing machine whereby the operation of wringing in either direction might be conducted simultaneously with the operation of washing or separately, with one motor, was void for want of invention.

The court there say, quoting Hailes v. Van Wormer, 20 Wall. 353, 368, 22 L.Ed. 241: "It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one by bringing together several old devices without producing a new and useful result the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices omitting others, in combination." Insofar as the elevating members were anticipated in the previous art relating to elevators, then these would be also anticipated in a lifting device carried within a straddle carrier unless a new function was performed thereby.

■■ There were various forms of carriers of different designs used for carrying lumber before the Gerlinger patents. The "straddle" type carries the load "within" the frame. Other types carry the load "upon" or "in front of" the frame. It is unquestioned that the previous art had shown examples of an elevator which had a positive means of lifting coupled with a means of limiting the movement in either direction of the load lifting devices, in carriers which transported the load either "upon" or "in front of" the frame. There is some testimony that these devices are different machines from straddle carriers. The plaintiff upon this theory disclaimed the intention of specifying a front end carrier which had all these elements, as infringement. Assuming the previous existence of a straddle carrier and of a truck supporting an elevator "in front of" its propelling mechanism, which exemplified the positive lift, the cut off of power within definite limits and the braking mechanism, it is inconceivable that invention can consist in transposing these elements so that the load is lifted "within" instead of "in front of" or "upon" the carrier.[6]

It seems too clear for argument that where the straddle type of carrier with load lifting devices "within" the frame and other carriers which had load lifting devices "upon" or "in front of" the frame,

[4] Dilg et al. v. George Borgfeldt & Co., 2 Cir., 189 F. 588, 590; Keene et al. v. New Idea Spreader Co., 6 Cir., 231 F. 701.

[5] Hemming v. S. S. Kresge Co., D.C., 24 F.Supp. 981, 983.

[6] "Position and rearrangement of parts are not invention, unless there results therefrom something more than the mere mechanical skill of the mechanic in solving problems confronting him." Logemann Bros. Co. v. Galland-Henning Mfg. Co., 7 Cir., 100 F.2d 557, 559.

that nothing more than mechanical knowledge or skill could be required to adapt the "positive lift" and "means of limiting the movement in either direction of the load lifting devices" already in use upon the other types to use upon the straddle type.

In considering the patent involved, therefore, emphasis is laid upon the fact that the device as a whole is a lumber carrier in a ⌐⌐ shaped frame. But such lumber carriers of the same general construction were old and were commonly designated as "straddle carriers". These had been commonly used in the trade but Gerlinger constructed a new form which was held not to infringe upon the previous devices in the form of the frame. But Gerlinger did not invent the "straddle carrier".

The field of lumber carriers is crowded by parallel invention. Even the specific field of the straddle type carriers is full. Litigation developed over this type of carrier, although the particular features here in issue were not in controversy. This is shown by the fact that Ross sued Overlin in this court upon an infringement of patent No. 1,209,209 relating to the construction of the frame of a straddle type carrier, Ross v. East Side Mill & Lumber Co., D.C., 257 F. 754, and that Overlin sued Dallas Machine & Locomotive Works (plaintiff here) alleging infringement of patent No. 1,289,529 as to the construction of the frame of a straddle lumber carrier by the devices manufactured under patent No. 1,422,958, Overlin v. Dallas Machine & Locomotive Works, 9 Cir., 297 F. 7, which is the patent at the basis of this suit. In neither of these cases was the question of patentability of an elevator mounted on a straddle frame discussed.

Gerlinger then did not attain any end by designating his machine a "lumber carrier" when essentially it was an aggregation of such diverse devices as an elevator and a truck. But even in this limited field he was narrowly circumscribed. It is true that the other "straddle carriers" had ropes or cable lifts and were probably not as efficient as the Gerlinger device. The ropes or wires sagged when a load was carried. But where in the "front end" carriers of Carr a positive platform lift was, exemplified there could have been no invention in substitution of this lifting means in the straddle carrier for the rope or wire lifting devices of Ross and Overlin. As pointed out in the file wrapper of the present Gerlinger patent, the rack and pinion lift was a mechanical equivalent to the previous means. Some suggestion is made that a four point independent lift is involved. Ross and Overlin each exemplified a four point lift. The differentiation of the Gerlinger device was in the positive nature of the lifting means. As before noted, there appears no mechanical difference between a positive four point lift and a positive lift on a platform. Neither the rack and pinion nor the four point positive lift is specified in Claim 4 as an essential of the particular combination. A brake in connection with the lifting mechanism is shown in Ross, so that idea was not a new one even with relation to a straddle carrier.

Gerlinger almost immediately abandoned the load actuated limitation on the travels of the rackbars. There is testimony to the effect that it was impracticable in field operations.

Therefore the element of the combination of Gerlinger which indicated patentability is no longer used by plaintiff. Although the Grab patent contains the load actuated stop, the machines actually built or operated by defendants do not. There is no infringement of the peculiar member which gave patentability to the Gerlinger design. While as pointed out above Gerlinger had the right to use the stop shown for the downward movement upon the upward movement also, he thereby lost the peculiar combination upon which the patent was based. The machine built or operated by defendants could have been constructed by the use of mechanical skill only, from the designs of the patents for front end carriers or the elevators, cited by the Master. There was, therefore, no infringement, since the devices were exemplified by the prior art.

■ ■ This brings up the question of laches. It has been proven that plaintiff after the abandonment of the load actuated stop manufactured a few carriers and then turned to the exclusive manufacture of hydraulic carriers. The advertisements as to the latter carrier and the continuous output by plaintiff indicate that Gerlinger believed these were the last word in carrier construction. At any rate in a highly competitive field, the plaintiff entirely disregarded manufacture and use of the machines which it now claims were infringements. In 1935 there were two developments. First, plaintiff went back to the manufacture of the rack and pinion carrier. Second, plaintiff heard that the de-

fendant Willamette-Hyster expected to sue it for infringement. Thereupon, it is claimed for the first time a detailed examination of the carriers made or operated by defendants was made by the agents of plaintiff.

There are three parties concerned in a patent suit, the patentee, the alleged infringer and the public. In order to promote invention it is proper to grant a monopoly. It is, however, in the interest of the public that as much of the art as possible be released from monopolistic control. While the characteristic of the patent is such that it is possible to lock up new developments, damage occurs to the public if another person is permitted over a series of years to place devices upon the market, while a patentee sits idly by and takes no action. Sufficient damage is here shown so that the doctrine of laches is applicable. While the case of Gillons. et al. v. Shell Co. of California, 9 Cir., 86 F.2d 600, may have distinguishing features, the principle is applicable here. [7]

Whether or not there was infringement still laches is a complete bar.

The court affirms the findings of the Master and overrules the exceptions and will enter decree dismissing the suit.

[7] See also Woodmanse & Hewitt Mfg. Co. v. Williams et al., 6 Cir., 68 F. 489, 492; Window Glass Mach. Co. et al. v. Pittsburgh Plate Glass Co., 3 Cir., 284 F. 645, 650.