**VEAUX v. SOUTHERN OREGON SALES,
Inc.**

No. E–9675.

District Court, D. Oregon.

May 13, 1940.

W. Elmer Ramsey and MacCormac
Snow, both of Portland, Or., for plaintiff.

A. E. Reames, of Medford, Or., for de-
fendant.

606

JAMES ALGER FEE, District Judge.

This cause was initiated by formal pleadings under the former equity practice. After adoption of the Federal Rules, pretrial procedure was held which eventuated in a thoroughly comprehensive pre-trial order. According to Rule 16, 28 U.S.C.A. following section 723c, this order controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. A summary of the agreed facts from the order is as follows:

Veaux filed his first application for patent on January 22, 1930. On February 10, 1930, one Ridley filed an application for patent. Veaux, on October 12, 1931, filed another application for patent. This second application and that of Ridley were placed in interference, as a result of which, priority was awarded to Veaux. The patent in suit was issued to Veaux on May 21, 1935, based on this second application, patent No. 2,002,102. No further proceedings were taken upon the Ridley application of which Southern Oregon Sales, Inc., the defendant, is the assignee and was in control thereof and of the prosecution of that application in the Patent Office and in the interference proceeding, and was advised of all matters relating thereto. All these applications and the patent in suit purported to cover a form of apple and pear box with cleats at both ends of the box, but upon one side only.

The defendant adopted a type of box which it used, manufactured and sold since sometime in August, 1929, and without interruption since that date, which is substantially the same as that exemplified in the Ridley application and in the patent in suit.

The plaintiff, Veaux, contends that defendant has infringed his patent and asks for an injunction and treble damages. The defendant claims (1) that Veaux was not the first inventor of the article, (2) that there is no novelty or invention involved in view of the prior art, (3) that plaintiff has been guilty of laches in reduction to practice and in the prosecution in the Patent Office, (4) that in view of these circumstances, the two years prior publication and use dates from the second application in view of the claimed abandonment of the first application, (5) plaintiff's patent was anticipated by other patents noticed. Plaintiff, however, claims that defendant is estopped to contest the validity of the Veaux patent because of the contentions made by it in the interference proceeding and the change of the position of plaintiff and the expenses incurred by him as a result thereof.

Issues to be tried were set out in a list of questions, set out in the order on the pre-trial procedure. The court will speak upon these issues generally, but will answer the specific questions as part of the findings.

■ Containers for vegetables and fruit, and particularly apples and pears, have been used in railroad and ship transportation for about forty years and the construction thereof is a comparatively old art. Gradually the forms have become more or less standardized. Cleats have been used upon every portion of rectangular containers for almost every purpose, commencing with simple nailing cleats to hold the box together and developing into cleats used to prevent the crushing of fruits in transit, to assure better ventilation of the contents of the container and to permit stacking. The use of the bulged rectangular container has accelerated the development of cleats for all such purposes. The use of car stripping in railroad transportation and dunnage in water transit, coupled with the placing of the bulged boxes upon the sides instead of upon the bottoms, has developed a method of protection by the carriers, even where uncleated containers were used. Generally speaking, most of this art is already in the public domain. Generally speaking, also, most of this art seems to be as simple as placing two sticks together. Given an apple box and a supply of lumber, it would seem that a competent carpenter would be able to devise means of protecting the contents of the box by nailing pieces of wood on it. Simplicity does not negative invention. It is nevertheless difficult to find invention in such an operation in view of the prior art, or to find long-felt need or genuine commercial utility for either the box of plaintiff or that of defendant.

Into this field of an extremely crowded art largely dedicated to the public Veaux and Ridley[1] entered. It is peculiar that the identical differentiation should have been made in the same trade territory with regard to the identical article, the Northwest apple box, and that each should have claimed it as an invention.

---

[1] Assignor of defendant.

The first application of Veaux was filed January 22, 1930, and that of Ridley February 10, 1930. The gist of the disclosure in each document is substantially identical. The identical box had been in use from the spring of 1929 and large quantities had been shipped and sold by defendant before either of these applications had been presented. These facts might indicate that either Veaux copied from Ridley, or Ridley from Veaux. But, it is much easier to believe that each attempted to capitalize upon a simple change in the construction of apple boxes, suggested by the desire to eliminate car stripping, by obtaining a monopoly by patent thereon.

The testimony of Veaux and his witnesses concerning his invention of the box is utterly unconvincing, although undenied. Each witness upon the point was favorably inclined to plaintiff and apparently willing to give color to his testimony in response to suggestive questions. The model box constructed by Veaux as an exemplification of the idea was never produced. The record shows that a box was sent to the Patent Office in 1932, but even this was not placed in evidence. No testimony was produced as to invention by Ridley and it is shrouded in mystery. The court could not find on the record that either Veaux or Ridley was the inventor. The statutory presumption alone designates plaintiff for the honor.

The testimony adduced by plaintiff shows that over one hundred men on the Seattle waterfront knew of this device in 1925, but that Veaux did not nail two sticks on a box until 1928. There was wide use of the box by defendant in 1929, but Veaux made no application for patent until January, 1930. Since simplicity is the characteristic of the device, and there are no difficulties shown, and no explanation of the delay, laches sufficient to void the grant is established. No one would have the right thus to extend the term of patentable monopoly over a period of time by inertia,[2] especially in the face of the fact that it is well established defendant and the public were using quantities of these boxes in the year 1929.[3] Difficulties for Veaux are only enhanced by the proceedings in the patent office. His first application was for a method and an article. Claims on both were denied. The denial became final.[4] Veaux abandoned the first application and permitted entry of final rejection. It is true that he filed a second application on October 12, 1931, but in this application for the article alone he made no reference to the prior rejected application, apparently hoping thereby to avoid the references. Veaux is forced by the circumstances to rely upon the first application to establish continuity in order to avoid the defense of public use more than two years prior to the filing of the second. If the claims were substantially identical in disclosure, the rejection should be held complete since no appeal was taken. If these were not substantially identical, continuity of prosecution would not be established.

There must have been some purpose in filing a new application. The statute according to its language sets two years prior to the application upon which the patent is based as the limit of immunity, 35 U.S.C.A. § 31. In this case there are intervening rights of the public which should prevent reference to a prior rejected application.[5]

[2] The procrastination was inexcusable, for " * * * if he may delay an application for his patent at pleasure, although his invention be carried into public use, he may extend the period beyond what the law intended to give him." Shaw v. Cooper, 7 Pet. 292, 322, 8 L.Ed. 689.

[3] The burden placed upon one who monopolizes a field is heavy. Laches may also be applicable to valid patents, if the article is used by the public without protest. See Dallas Machine & Locomotive Works, Inc. v. Willamette-Hyster Co., D.C., 28 F.Supp. 207; Gillons v. Shell Oil Co., 9 Cir., 86 F.2d 600; Woodmanse & Hewitt Manuf'g Co. v. Williams et al., 6 Cir., 68 F. 489, 492; Window Glass Mach. Co. v. Pittsburgh Plate Glass Co., 3 Cir., 284 F. 645, 650.

[4] It should have been treated by the Patent Office as res adjudicata. In re Becker, Cust. & Pat.App., 74 F.2d 306, 309.

[5] The case of Crown Cork & Seal Co. v. Ferdinand Gutmann Co., 304 U.S. 159, 58 S.Ct. 842, 82 L.Ed. 1265, must be differentiated. The applicant here was guilty of laches. The rights of the public had intervened, whereas in that case there was no prior adverse use (304 U.S. page 164, 58 S.Ct. 842, 82 L.Ed. 1265). The facts vouched for by plaintiff here indicate an intention to abandon long prior to the filing of the first patent application. Abandonment is pleaded in this

■ The rejections of the claims of Ridley and Veaux, respectively, time after time by the Patent Office, including the final denial of the first application of Veaux, show clearly no invention is to be discovered in either disclosure. These findings are supported by reason and it is impossible to escape from the conclusion that no invention was present.

The Patent Office rejected the first Veaux application as to these claims on Tucker, 1,475,093, November 20, 1923. Final rejection was based on Bruhn, 1,470,-215, October 9, 1923, because such addition of "cleats to the end of element 3 of Bruhn" "does not rise to the dignity of invention", and Horton, 1,636,607, July 19, 1927, because the latter "fully discloses and teaches the use of cleats to space receptacles apart".

The Patent Office also rejected the Ridley application on Guenther, 1,541,492, June 9, 1925, Williams, 1,160,681, November 16, 1915, and Shaw, 1,525,663, February 10, 1925, saying:

"Applicant's alleged novelty is in the use of spacing cleats on a box shown in Guenther as fully taught by Williams and Shaw. To put such spacers on the tops, sides, bottoms or any other place on a box is held to be unpatentable as being an obvious expedient.

"No new and unobvious result for applicant's use of obviously old means has been set forth.

"The use of spacing cleats is old, and the use of them is dedicated to the public. No patentable novelty is seen in applicant's device."

However, an amendment was made and Ridley's application was again rejected, the Acting Examiner saying:

"The art of record shows bulge packed boxes with exterior cleats at the ends. These cleats have as inherent functions all of applicant's alleged new results for these elements, which are shown to be old. No patentability is seen in applicant's device over the art of record. The size of the cleats used obviously depends on the whim of the box maker. No invention can be attributed to an old device by a mere allegation or showing that such old device has capabilities not mentioned in the prior art.

"Claims 1–5, inclusive, are rejected. No invention is seen in using a plurality of exterior cleats on the Guenther box.

"The colors of the box and cleats are merely a matter of choice. No invention is seen in the use of contrasting colors."

Based on another amendment of Ridley, rejection was in following language: "Elements 10 in the Lippmann device are obviously the full mechanical and functional equivalent of applicant's element 9. The elements 9 and 10 of Lippmann [1,412,361, April 11, 1922] are a clear and complete teaching of the idea of providing cleats at the ends of a crate to support such a crate in spaced relation to another crate, a floor or a wall of a storehouse, etc. Applicant in claim 8 calls for a crate as shown in Guenther, of record, in connection with which he uses cleats at appropriate ends of side, bottom or top walls as is taught by Shaw and Williams, and as is well known in the art. Some of these cleats, however, of applicants, are given a distinctive color to indicate when the box is in upright position instead of using indicia reading, "This Side Up". No invention is seen in this idea. This same element or cleat is made of such a size that it can perform the function performed by cleats 9 or 10 of Lippmann. It is noted that it is not entirely clear whether elements 9 are on the top or on the bottom of the box as in Fig. 1 they seem to be on the top, and in Fig. 2 on the bottom. It is seen, however, that the elements 9 or 10 shown in the above cited patent to Lippmann anticipate the use of such an element on the top and also the use of such an element on the bottom of a box."

On Veaux's second application rejection was made on Caldwell, 1,605,426, November 2, 1926, which clearly shows the functional use of the cleats to take care of bulge, but the cleats were on top of the box. The Examiner says: "Caldwell in Fig. 4 at 13a clearly shows the use of 'a pair of cleats secured transversely to the ends of one side only of the box whereby said cleats retain the boxes in spaced apart relation when stacked in tiers with the cleats of each succeeding box above resting on the side of the box opposite to the cleats of the next box below'."

Rejection was based also on Glidewell, 488,997, January 3, 1893, and Guenther. The Patent Office explains that Glidewell

case where it was not in that (304 U.S. page 165, 58 S.Ct. 842, 82 L.Ed. 1265). Here there was a final rejection of substantially the same claims, while the claims although cancelled in that case, were not apparently finally rejected.

has the side cleats "terminating short of the top and bottom of the apple box", and comments, "No invention is seen in omitting" the top and bottom cleats shown in Glidewell. Further, it is said "no invention is seen in adding the side cleats" "terminating short of the top and bottoms of the apple box" to "the crate shown in Guenther".

The application of this appears in the following: "No invention is seen in placing" these spacing cleats on the side instead of the top of the box.

The objects described by Veaux may be used to determine whether his device was an advance over the prior art. Veaux's contentions in this regard are that his box, (1) provides "means whereby this particular kind of box may be stacked one upon the other", (2) that it may be then "transported from place to place without danger of bruising the apples contained therein", (3) that "the boxes are stacked in spaced apart relation thus leaving a ventilating space", (4) effects a saving "by eliminating the use of all dunnage", (5) effects "a saving in handling whereby tiers of the boxes may be loaded upon and unloaded from a truck by a single workman", (6) provides "a positive means for indicating which side of the boxes are to be placed downward one upon the other when they are stacked in tiers".

These objects are obtained, so he claims, by placing two cleats upon one side of the box only. It is certainly obvious that the attempt to narrow the patent to the Northwest apple box only cannot prevail, if the cleats perform a like function and accomplish a like purpose in any other similar structure. Anticipation could be so established, or in the event of a valid patent, infringement could be shown by the use thereof. If the same functions are performed and the same results are obtained it could make no difference if the cleats were placed on top of the box or on the sides or on two sides or on top and bottom. If two cleats of very thin material were placed on each side of a rectangular box which had no bulge of the side boards, the results would be the same. If heavy cleats were placed at each end on top of a box which had a bulge, the purposes would have been carried out just as effectually. A similar result would follow if a cleat were placed on the top and on the bottom sufficient to compensate for the bulge above and below. If the bulge on the top was

great and the bulge upon the side small, it would be convenient to place the spacing cleats on the side, rather than on top, but no invention could be found in this mechanical change of position. In all these forms, the prevention of bruising, the stacking, the ventilation, handling in tiers, indication of top side of box, are accomplished. The testimony indicates that the dunnage or car stripping was not eliminated by Veaux's invention.

In this connection if there were no other element in the case, if it be assumed that in shipping carload lots, the Northwest apple boxes were laid upon their sides, separated from each other by car stripping running clear across a tier and nailed to the separate boxes on one side, no invention is shown by cutting these strips into lengths slightly shorter than the side of each apple box. As a matter of fact, the utility of car stripping to prevent lateral movement in the complete pack was thereby impaired. This is shown by the fact that the carriers refused to eliminate car stripping when tendered shipments of cleated boxes.

The record shows that strips had been placed on every side, top, bottom and ends of boxes used to ship fruit and vegetables. These strips had been used to hold the box together, to prevent damage to the box, to make a pile of boxes stable, to prevent the contents from crushing, to take up the bulge on the box so that the contents would not be injured, to aid in ventilation, to assist in loading of boxes. The prior art exemplifies every function of the Veaux box, and shows that cleats had been used to subserve every purpose indicated by him. It is true it may not have been definitely proven that only two cleats were ever placed upon the side of the box to subserve these purposes. There had been two cleats placed upon the sides in combination with strips placed in other positions upon the box. These cleats upon the side served exactly the same purposes as do those in this patent, and the omission of the additional strips from the other positions served no new purpose. In fact, the box in evidence has in addition to the cleats on the side nailing cleats on top and bottom.

It was proved that bulged citrus fruit containers with cleats distinguished from nailing strips were provided for by certain Interstate Commerce Regulations effective in 1919 and 1920. These cleats were probably placed upon top of the crate in each

610

instance, but the boxes so constructed served every purpose and performed every function of the Veaux box. Neither novelty nor invention can be discovered in the box upon which Veaux claims a patent.

"We believe each element of the claims anticipated by the prior art. If strict anticipation is not existent, the prior art clearly suggests to the skilled mechanic everything Schmithals taught. Position and rearrangement of parts are not invention, unless there results therefrom something more than the mere mechanical skill of the mechanic in solving problems confronting him." Logemann Bros. Co. v. Galland-Henning Mfg. Co., 7 Cir., 100 F.2d 557, 559.

The prior art as shown by the record negatives novelty and invention in the device of Veaux. At most, his cleated box exemplifies mechanical choice.

The proceedings in the Patent Office indicate that there is no invention in this device. The administrative officials cited, both as to Veaux and Ridley, patents which cover every possible phase of the situation. No refutation of these bases of rejection was made by the administrative body. The last amendment changing the phraseology from "The combination with" to "An article of manufacture comprising" was not sufficient to account for the change, and brought Veaux back to the language of his original application which had been rejected finally. The reasons given by the Patent Office for rejecting the claims of the applicants, respectively, are still valid. The patent seems finally to have been allowed to Veaux in view of threat of appeal. The patents noticed are complete anticipations, beyond any reasonable doubt.

If the defendant alone were involved an estoppel could be created against it. The defendant prosecuted the case before the Patent Office vigorously. The arguments made by its counsel can be quoted for the validity of the Veaux application. It fostered the impression of patentability by contending and by advertising that this was an outstanding invention revolutionizing the fruit industry. Many of the maneuvers seem to have been predicated upon the theory that delay was desirable. The showing made by it as to the date and circumstances of conception and reduction to practice are extremely nebulous. Ridley was not called to the stand and his absence is not satisfactorily explained.

However, the interests of the public are always involved in a patent case and the public has to be protected from unjust monopoly.[6] Even if plaintiff and defendant should stipulate that invention was present, the court should consider the question. The cause has been fully tried and, without regard to the interests of the plaintiff or the punishment of the defendant, the rights of the public must be declared. Monopoly in any field should be curbed unless it appears that the public is receiving a benefit from the grant of which otherwise it would be deprived. The expense and trouble caused private claimants in trying to find the pot of gold at the end of the rainbow is to be deplored, but neither should be recompensed at the expense of the public. The court must, irrespective of the presumption of validity, examine independently the questions of invention, novelty and utility.[7]

Findings and judgment for defendant may be prepared.

---

[6] This conduct of defendant does not preclude "the court from relieving the alleged infringer and the public from the asserted monopoly when there is no invention". Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 477, 55 S.Ct. 449, 455, 79 L.Ed. 997.

[7] Reckendorfer v. Faber, 92 U.S. 347, 355, 23 L.Ed. 719.